## THE DIMITRIOS CHANDRIS.

## RING v. THE DIMITRIOS CHANDRIS.

### No. 79.

District Court, E. D. Pennsylvania.
March 17, 1942.

Krusen, Evans & Shaw, of Philadelphia, Pa. (Edwin Longcope, of Philadelphia, Pa., of counsel), for libellant.

Rawle & Henderson, of Philadelphia, Pa. (Thomas F. Mount, of Philadelphia, Pa., of counsel), for respondent.

KALODNER, District Judge.

The decision in this case, tried before me in Admiralty without a jury, hinges upon the answers to the following questions:

(a) Where one contracts to furnish personal services over a period of time for a money consideration, and through lack of care in the performance, the other contracting party suffers special damage: should the first contracting party be paid for the service?

(b) Under such circumstances, is the person furnishing the service liable to the other party for the special damage?

The facts are these:

Ring, the libellant, is engaged in the business of furnishing watchmen for, inter alia, ships, wharves and docks.

The respondent steamship or her agents requested the libellant to furnish watchmen in shifts over a period of time between October 8 and October 22, 1940.

When the vessel arrived at Philadelphia on October 7, 1940, she had on board a crew of 34 alien seamen. The United States immigrant inspector ordered them detained. On October 14, 1940, the detention order was amended by reducing the number to six seamen.

Under the law, the vessel, master and agents are subject to a fine of one thousand dollars for each detained seaman who escapes.

Ring furnished watchmen in the numbers and for the interval of time requested, in shifts, so that the vessel and the dock were constantly guarded. Nevertheless, two of the detained seamen escaped some time between the night of October 14 and the morning of October 15—apparently between 3 A.M. and 7 A.M. of October 15th; and consequently a fine of two thousand dollars was incurred by the vessel. The fine has not yet been paid.

The libellant, Ring, at all times relevant to this discussion, knew that a fine of one thousand dollars would be laid against the vessel for any detained seamen who escaped.

On the night of the escape, the detained seamen were in the forecastle, egress from which was possible only by one means—the forecastle door, which door was or should have been under the continual observation of the watchmen, as was the dock by which the vessel was moored, and the sides of the vessel (so that no one could slip down unseen by ropes or chains). Vessel and dock were both adequately lighted at the time.

So far as the record discloses, no one knows how or exactly when the seamen escaped, except that it was some time during the night of October 14–15, and neither party offers any explanation (except by

way of guess or possible inference) as to the method or manner of escape.

The agreed price for the services of the watchmen was $1,750.10, based upon the number of watchmen and the time spent by each. There is no dispute as to the calculation.

The libellant filed her libel and claimed the said amount of $1,750.10 for supplying the watchmen. The respondent (claimant and cross-libellant) defended on the ground that the services were improper, as evidenced by the fact of the escape and, as cross-libellant, claims to recover the $2,000 from the libellant because of the imposition of the fines in that amount.

In support of the conflicting theories propounded by each party, various types of evidence were introduced, some of which, however, upon analysis appears to have little bearing upon the real point at issue.

Thus the claimant attempted to show that the libellant's watchmen did not exert sufficient efforts to have the detained seamen identified to them by the officers of the ship. This is said to be important, because only some of the seamen were detained, and the others were permitted shore leave, and given passes, so that the watchmen would permit them to go. One of the seamen claimed that his pass had either been lost or stolen from him, and accordingly, the claimant evolves the theory that the escaped seamen might have found or stolen passes from others, presented them to the watchmen, and calmly walked off the ship: the fault being that of the watchmen, for failing to have all the detainees identified to them.

The claimant also argues that whenever the watchmen requested identification, they obtained it, but complained that there was lack of proper supervision over and organization of the watchmen.

This theory of the case is utterly irrelevant because it appears that on the night of the escape, only two seamen left the ship on passes, and both these seamen returned to the vessel. Consequently, the fact persists that the detained seamen left the ship without presenting passes and without being seen by the watchmen—which means, of course, that no attempt was made by the watchmen to detain them. None of the watchmen actually saw the detained seamen leave the vessel.

There was also evidence that the crew was unruly and indulged in some fighting, and that the master feared to go into their quarters to identify them to the watchmen. The libellant argues that the watchmen consequently failed to receive proper cooperation from the ship's officers in the matter of identification—thus implying an excuse for the escape.

None of these factors is important. Since the watchmen did not see the detained seamen leave the ship, it does not matter a particle whether they knew their identity or not. There is no disputing that the watchmen knew that their duty was to prevent certain men from leaving the ship, and that they knew that others were permitted to leave the ship if they had proper passes. Had the detained seamen presented themselves to the watchmen before leaving, deceived them in some way, and thus obtained permission to leave, the question of forged or stolen passes, or the presence or absence of cooperation from the officers of the ship, might become important. Under the facts as they exist, however, those phases drop out of the case.

■ The first real question is: in the absence of any explanation based on adequate testimony as to the method and manner of escape, is it to be found that the watchmen were guilty of dereliction of the duty they were paid to perform, if the detained seamen escaped from the forecastle of a properly lighted ship through the only exit available, which exit was, or should have been, constantly under watch?

I find that the watchmen were at fault. The libellant has argued that no accusation of negligence can successfully be fastened upon the watchmen of the vessel, unless the latter explain how the escape was effected. I do not agree with this view. Were this contention of the libellant to prevail, it would lead to a curious logical paradox. The watchmen, whose duty it was to know the facts surrounding any escape—having been employed to prevent it—admit ignorance, but insist that the employer should know such facts (notwithstanding that he hired them to do the watching) before he can fasten liability upon them. I cannot subscribe to so self-contradictory a tenet.

The libellant's argument on this score really amounts to a contention that finding a breach of duty or carelessness on the part of the watchmen under such circumstances amounts to applying the doctrine of res ipsa loquitur. This is not so.

For example, the doctrine of res ipsa loquitur does not apply in trespass or so-

called negligence cases in Pennsylvania. However, a doctrine closely approaching it has been adopted by the courts in that jurisdiction. For instance, if an automobile proceeding along the street suddenly leaves the cartway, runs up on the pavement, and strikes a pedestrian, a prima facie case of negligence on the part of the driver is thereby established, without showing more; and the duty of explaining the happening or furnishing some justifying excuse is cast upon the driver, because he has permitted something to happen which does not happen in the ordinary course of events.

Thus in the instant case the duty of the watchmen was to watch. The detained seamen could only have left the ship through the forecastle door (unless they hewed their way through the hull of the ship—a contingency too remote to receive consideration here). If they left through that door, the watchmen should have seen them. There were only two possibilities: either the watchmen did not see the detained seamen leave, or, seeing them, made no effort to detain them. In either event, there was an improper performance of duty on the part of the watchmen, a lack of necessary and proper care, a breach of performance under the contract. The fact of the escape without any adequate explanation offered therefor by the watchmen makes this plain.

I therefore find that the libellant, Ring, improperly and inadequately performed the services for which she was to be paid.

The next question is whether, by reason thereof, the libellant becomes liable for the amount of the fine ($2,000). In my opinion, she does.

█ Damages to which an injured party is entitled are those which would naturally or reasonably flow from the breach [1]: In applying this rule, or elucidating it, it is also held that the party injured is entitled to those damages which the other party could or should foresee, as damages which would probably ensue from the particular breach.

At times it is difficult to determine whether the party liable could foresee a particular item of damage. In the case at

bar, there is no such difficulty. The libellant Ring knew that the six seamen were under an order of detainer, and that a fine of one thousand dollars would be incurred for each seaman who escaped: (R-10). The testimony is:

"Q. And you knew from the beginning when you first started to furnish your watchmen that in the event any of these detained seamen should escape that the vessel would be liable to a fine of $1,000, didn't you? A. That is customary, yes.

"Q. And the purpose of sending your watchmen was to see that none of these detained men escaped? A. The men were to do their best to keep them on board, but not guarantee to keep them on board."

█ The Restatement of the Laws of Contracts, § 330, in discussing a situation such as existed here, states: "In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

Applying this language, it may be said that of course it was shown here that the libellant Ring not only had reason to know the facts and to foresee the injury, she actually did know the facts and did foresee the injury, as she admitted.

[6] The damage here claimed by the vessel (i. e., the amount of the fines), is in the nature of special damages, in which field of the law it is all the more necessary to invoke the doctrine of foreseeability. As already indicated, I am convinced that this special damage is one for which the libellant is liable. See the definitions of Special Damages collected in the notes to 17 C.J. 715, § 42; 25 C.J.S., Damages, § 2.

I therefore find that the libellant Ring is liable to the claimant and cross-libellant for fines.

█ However, the fines have not been paid. There is some possibility that the

---

1 "It may be stated as a broad general rule that a wrongdoer is liable to the person injured in compensatory damages for all of the natural and direct or proximate consequences of his wrongful act or omission * * *." 25 C.J.S., Damages, § 18.

"Expenses imposed upon the injured party by reason of a breach of contract ordinarily form a recoverable element of damage, provided it appears that such expenses were the natural consequence of the breach * * *." 25 C.J.S., Damages, § 46.

fines may be reduced upon application, perhaps altogether avoided. There is no doubt in my mind, however, that at present, the situation is that the claimant is liable for their payment. If the claimant escapes any part or all of the fines, the libellant should be subrogated to any benefit thereby accruing to the claimant. Suitable provision may be made in the decree to provide for such possibilities. Such provision should include an order upon the claimant to initiate and pursue any possible proceeding looking towards remission or reduction of the fines or, in the alternative, permit the libellant to do so.

The libellant has also argued that she is not liable for the fines because the claimant carries insurance against fines. That argument cannot prevail. The only effect of the insurance, so far as the libellant is concerned, is that the insurance company would be subrogated to the vessel's claim against the libellant for the amount of the fines.

The liability for the fines is fixed by statute, in section 20 of the Act of May 26, 1924, 8 U.S.C.A. § 167. Even though the fines have not yet been paid, nevertheless the libellant is liable therefor: Buckbee v. P. Hohenadel, Jr., Company, 7 Cir., 224 F. 14, L.R.A.1916C, 1001, Ann.Cas. 1918B, 88.

The respondent concedes that the libellant is entitled to payment for the services of the watchmen.

The libellant's right to payment is well-settled.

"The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. In other words, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed. * * *" 25 C.J.S., Damages, § 74.

In accordance with the above, I find, therefore, that the respondent owes the libellant Ring $1,750.10; and the libellant Ring owes the respondent $2,000. The arithmetical result is that the libellant Ring owes the vessel $249.90: she retains, however, a right of subrogation or credit to any remission or reduction of the fine.

Let a proper decree be submitted.