REMINGTON RAND, Inc. v. UNITED STATES et al. (JOHN T. CLARK & SON et al., Impleaded).

The SAMIDA.

United States District Court
S. D. New York.

June 5, 1951.

Bailey & Muller, New York City (Robert F. Doran, New York City, of counsel), for libelant.

Irving H. Saypol, U.S. Atty., New York City (William H. Postner, New York City, of counsel), for respondents.

Atkins & Weymar, New York City (William Weymar, Jr., New York City, of counsel), for impleaded respondent John T. Clark & Son.

Dow & Symmers, New York City (Edwin K. Reid, New York City, of counsel), for impleaded respondent McRoberts Protective Agency, Inc.

S. H. KAUFMAN, District Judge.

This libel was filed by the assignee of a bill of lading to recover the value of goods which the carrier failed to deliver at the port of destination. By agreement of the parties, the libel has been deemed discontinued as against a number of the original parties, and the respondents in this case now are: The United States of America, which holds the legal title to the S.S. Samida and which has agreed to pay any final decree against Ellerman & Bucknall Steamship Co., Ltd.; Ellerman & Bucknall Steamship Co., Ltd. (hereinafter referred to as "Ellerman"), which, by agreement of the parties, is to be treated as the operator

of the S.S. Samida under a bareboat charter; and Norton, Lilly & Company, Ellerman's New York agent.

Respondents have impleaded two additional parties, which are McRoberts Protective Agency, Inc. (hereinafter referred to as "McRoberts") and John T. Clark & Son (hereinafter referred to as "Clark"). McRoberts was engaged to guard the cargo in New York and Clark, the stevedoring contractor, was engaged to load the vessel on the voyage in question. Respondents claim that if they are liable for the loss of the calculating machines, then one or both of the impleaded respondents are liable over to them.

The facts are substantially as follows:

In February, 1944, Marchant Calculating Machine Co. shipped fifteen cases of calculating machines to libellant in Bombay, India, each case containing two calculating machines. The shipment went by truck from California to Marchant's New York agent, and it was delivered at Pier 14, North River, in New York, to respondent Ellerman on March 2, 1944, for carriage by the S.S. Samida. The bills of lading issued by both the trucking company and the steamship company, and the dock receipt issued by the steamship company, all recite that the cases were received in apparent good order. At the pier the cases were placed in a "special cargo" crib, where they remained until March 5th, when all special cargo was loaded on the ship. The cases were stowed in a lower hold, which was covered by hatches, and on top of the hatches 3-ton railway bogies were stowed. The only other entrance to the hold was by the trunkway, which was kept locked, the key being in the possession of the ship's second officer. Within a few days after the cases were loaded on board, six of the calculating machines in the shipment were being offered for sale in New York by a person subsequently convicted for having these stolen goods in his possession. Thereafter, on or about March 10, 1944, the Samida sailed from New York, and on its arrival in Bombay it was discovered that only two of the fifteen cases were intact.

## Liability of Respondents

The Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303, subdivision (4), provides that a bill of lading is prima facie evidence of the receipt of the goods therein described. In addition to this prima facie evidence it appears that the fifteen cases were in good condition and had not been tampered with at the time they were loaded on board the Samida. The acceptance of the cargo without complaint by the vessel's cargo officer, who was checking the loading, and the testimony of the special cargo clerk who saw the cargo from the time it was placed in the crib until it was put in loading nets, permit no other inference. When the vessel arrived in Bombay, not only were the contents of thirteen of the cases missing, but the cases themselves were broken apart. The only reasonable inference to be drawn from these circumstances is that the machines were in the cases when they were delivered to the carrier, and that the theft occurred some time after the cases were on board the Samida and before the Samida left New York. Although the hold was well secured, it was not impossible for a thief to have picked the lock on the trunkway in order to get to the machines and make off with them. The goods having been received by the carrier, it follows that respondent Ellerman is liable for its failure to make delivery in Bombay, unless the failure is in some way excused.

In their answer to the libel, respondents raised the defense that the bill of lading provided that the carrier shall not be liable for loss or damage caused by theft. Although it is not clear whether or not respondents have since abandoned this defense, it does not aid them here. Such an exemption will release the carrier from liability only where the theft occurs through no fault or negligence by the carrier or its servants (The Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303, Subdivision (8); see The Ghazee, 2 Cir., 172 F. 368), and the carrier has not sustained the burden imposed by Section 1304(2) (c) of proving freedom from negligence.

The parties having stipulated that in March 1944 each of the calculating machines had a market value of $125 and that this value is within the maximum limit of liability under the bill of lading, a decree should be entered against respondent Ellerman for $3,200 plus interest and costs.

### Liability of Impleaded Respondents

Respondents claim that McRoberts, the company engaged to furnish guards, and Clark, the stevedores, are liable over to them for the loss.

1. The claim against McRoberts is based on a contract between McRoberts and respondent Norton, Lilly & Company, Ellerman's New York agent, whereby McRoberts agreed to furnish guards for Ellerman vessels during the calendar year 1944. Insofar as relevant, the contract provides as follows:

"The McRoberts Protective Agency, Inc. undertakes to furnish guards for:

Ellerman & Bucknall Steamship Co., Ltd.
For Themselves And Associated
Ellerman Lines
steamers and cargoes at the Port of New York, at the rate of $7.50 for guards, and $8.00 for gatemen, per eight hours, day and night, for each man employed and to guarantee against loss by theft only while their men are in charge."

█ To sustain the claim against McRoberts, it is not enough to show that there was a theft, for McRoberts contracted to be liable "only while their men are in charge". Respondent must prove that McRoberts' employees were or should have been on duty when the theft occurred, and no such showing has been made. The contract does not require McRoberts to guard the cargo twenty-four hours a day; it merely obligates them to furnish guards at a fixed fee when called upon by the carrier to do so. There is no evidence indicating that respondents called on McRoberts to furnish a 24-hour guard for the cargo on board the vessel, and in fact such a watch was furnished on only two of the five days during which the cargo was on board the vessel before it left

New York. Since there is no showing that the theft occurred while McRoberts' employees were on duty, respondents' claim over against McRoberts must be dismissed. The Dimitrios Chandris, D.C., 43 F.Supp. 829, affirmed Ring v. Dimitrios Chandris, 3 Cir., 133 F.2d 124, which is cited by respondents, is not in point, for in that case the event giving rise to the injury occurred during the time when watchmen were on duty.

█ 2. The claim over against Clark is based on respondents' contention that the machines were stolen by a longshoreman in Clark's employ, who was working on the pier at which the Samida was loaded. Insofar as this claim is based on the theory that Clark was negligent in employing the longshoreman, it cannot be sustained, since there is no evidence of negligence. However, the liability of Clark is also based on a contract between Clark and the War Shipping Administration, which provides as follows: "Liability of the Stevedore: While performing the work the stevedore shall * * * be responsible for any and all loss, damage or injury * * * to * * * cargo * * * or any other property or thing arising through the negligence or fault of the stevedore, its employees, gear or equipment; * * *".

If these machines were stolen by a longshoreman in Clark's employ, this would be a loss occasioned by the fault of an employee and Clark would be liable.

█ At the trial, respondents called one witness to prove that the goods were stolen by one of Clark's longshoremen. This witness, Claus, was the person who tried to dispose of the stolen machines and was convicted of having them in his possession. However, Claus was neither frank nor honest in his testimony. He denied having obtained the calculating machines from an employee of Clark. In addition, respondent Clark has produced one Adinolfi, a person whom Claus at one time named as the person who sold or supplied the calculating machines to him. After hearing the testimony of Adinolfi there is grave suspicion that Claus in fact did

obtain these calculating machines from Adinolfi. However, in the present state of the record it must be found that respondents have failed to sustain the burden of proving that the employee of Clark did in fact steal the calculating machines from the vessel after they were loaded.

Libellant is entitled to a decree against Ellerman & Bucknall Steamship Co., Ltd. and the United States of America under the stipulation heretofore made. The claim over of the United States against McRoberts and Clark must be dismissed.

The foregoing seems to state sufficiently the facts found and my conclusions thereon. If any further facts are required, they may be submitted by any party to this action.

A decree may be entered.