728 A.2d 239 (1999)
321 N.J. Super. 21
Anthony PRIOLO, Plaintiff-Appellant,
v.
COMPACKER, INC., Defendant-Third Party Plaintiff/Cross-Appellant,
v.
Tyco Industries, Inc. Third-Party Defendant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
March 16, 1999.
April 12, 1999.
*240 Robert Aaron Greenberg, Mouint Laurel, for plaintiff-appellant (Taylor, Boguski & Greenberg, attorneys; Mr. Greenberg, on the brief).
Lawrence Berg for defendant-third party plaintiff/cross-appellant (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Berg and Paul S. Snyder, on the brief).
Fiona J. Van Dyck, Mount Laurel, for third-party defendant/cross-respondent (Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, attorneys; Eileen T. Burns, on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by
*241 CARCHMAN, J.A.D.
This appeal requires us to examine whether a trial judge's absolute bar of all side-bar conferences during trial is an appropriate exercise of discretion. We conclude that it is not. The application of the bar in this case facilitated the improper admission of evidence as to plaintiff's negligence which, despite a curative instruction, so prejudiced plaintiff that a new trial is warranted.
Plaintiff Anthony Priolo, a mechanic employed by third-party defendant Tyco Industries, Inc., suffered the loss of two fingers of his left hand when his hand was caught in the chain drive of a hot glue box sealing machine manufactured by defendant Compacker, Inc. The jury found in favor of Compacker and concluded that the machine was not defectively designed. On cross-motions for summary judgment on Compacker's claim for contractual indemnification from Tyco, the motion judge found that Tyco had no obligation to defend Compacker in plaintiff's action. Plaintiff appeals the jury determination and Compacker cross-appeals the judgment denying indemnification. We reverse the judgment in favor of Compacker on the underlying cause of action and affirm the denial of indemnification.
We briefly recite the relevant facts adduced at trial. Plaintiff's employment responsibilities included the cleaning and maintenance of the sealing machine. On September 2, 1992, he was attempting to remove accumulated glue from the chain drive of the machine when another worker placed another box in the machine, activating the machine cycle and moving the chain. Plaintiff's hand was caught, and his left index and middle fingers were traumatically amputated.
The machine, which was used to seal and glue boxes, was manufactured by Compacker, and when shipped to Tyco and assembled, it included lexan covers which were affixed by screws or bolts to the transfer case area. The cover and other points of the machine contained warnings that the machine was not to be operated with the cover removed. The lexan covers were not permanently attached and were, in fact, removed prior to the date of the accident. There was no lockout mechanism which would cause the machine to shut down if the shields were removed. Plaintiff admittedly failed to shut down the machine before working on the chain, and the accident followed.

A.
On appeal, plaintiff argues that defendant improperly elicited comments about plaintiff's negligence.[1]
In defense of plaintiff's claim, Compacker asserts that plaintiff's negligence, which he conceded in failing to disable the machine before working on the chain, was relevant as to causation. In a pretrial motion, the judge ruled that plaintiff's negligence was not relevant and would not be permitted as an issue at trial. During another colloquy, out of the presence of the jury, the trial judge indicated:
THE COURT: Well, his conduct was not the solewhat the jury has to determine, number one, was it defective. In order words, was this defective in that this shield could be removed. Now, I assume you're going to have experts testify on both sides of the fence, and the jury is going to have to determine that, you see. Now, whether or not they find that it was defective, then they have to determine whether or not the defect was a proximate cause.
In opening statement, counsel has alwaysnot always, but most always, of course, made a misstatement of the law because they talk in terms of the proximate cause, which everybody does, except me. I try to keep it the way it's suppose to be, a proximate cause, and therefore evidence concerning the conduct of the plaintiff is really not relevant. It really isn't.
But there was a lot of stuff yesterday that you did on cross-examination that no objection was made, and I don't try the case, and therefore it went in. But when it comes down to charging the jury, I will *242 make it abundantly clearas the fellow used to say with the V signs on his fingers, remember?I will make it abundantly clear as to what they're going to have to determine. And all they're going to have to determine is whether or not this shield, the missing shield, whether it was foreseeable by the manufacturer that somebody would take it off and reach in and do their thing, notwithstanding all the rest of the facts and circumstances surrounding the happening of the accident. You know, 99.9 percent of these accidents happen because the employee did something wrong, quote-unquote. Always. If he never did anything wrong, you'd never have an accident. Right?
DEFENSE COUNSEL: Presumably.
THE COURT: Sure. So it's a given that he did something wrong. The thing they have to determine is forget what he did wrong, was it foreseeable by the manufacturer that some employee would do something wrong? And that's what I'm going to tell the jury.
DEFENSE COUNSEL: I understand, Your Honor.
Neither party objected to the trial judge's proposed but unformulated instructions.
Despite the judge's ruling, defendant pursued the matter. During defendant's case, the following exchange took place in the presence of the jury:
Q: Did you have a discussion with plaintiff about the accident?
PLAINTIFF'S COUNSEL: Objection, Your Honor.
THE COURT: Why?
PLAINTIFF'S COUNSEL: This is completelyI know where counsel is going with this and I was concerned about this earlier. This is completely irrelevant to the issues before the jury in this case.
THE COURT: Was the discussion concerning the facts and circumstances surrounding the happening of the accident?
DEFENSE COUNSEL: Yes, Your Honor.
PLAINTIFF'S COUNSEL: No, Your Honor, I disagree completely.
THE COURT: Well, let me say this to you, counselor. If you're representing to the court as an officer of the court that this discussion relates to the happening of the accident and it doesn't, the jury is going to see that other side of it.
DEFENSE COUNSEL: I understand. I believeJudge, I can show you the deposition
THE COURT: That's it. I'll take that.
DEFENSE COUNSEL: Counsel and I both
THE COURT: I'll take it. Let's move on.
DEFENSE COUNSEL: I'm not sure if we're drawing some fine line here.
THE COURT: You heard what I said, sir.
DEFENSE COUNSEL: Your Honor, it relates to an admission made by plaintiff about the accident.
PLAINTIFF'S COUNSEL: And that's exactly my point, Judge.
THE COURT: Well, an admission by a party is admissible under 803(b)(1) every day of the week.
PLAINTIFF'S COUNSEL: I don't think it constitutesit rises to that level in any respect, Judge.
THE COURT: Any utterance, any statement from the mouth of a party is admissible as an exception to the hearsay rule, a statement by that party. It doesn't have to be an admission against interest. All it has to be is a statement.
PLAINTIFF'S COUNSEL: It comes about the question for the purpose for which it is offered in this case, Your Honor, and how it relates to the issue at hand.
THE COURT: Well, if it doesn't relate to the issue at hand, it's not relevant. And if it's being offered and it isn't relevant, then you know what's relevant, sir.
PLAINTIFF'S COUNSEL: It has to do with rulings Your Honor has already made in this case.
THE COURT: If it dealslisten, you know what I'm saying. You know what the definition of relevant evidence is, evidence having a tendency in reason to prove a material fact in issue, 401, admissible under 402, right? *243 PLAINTIFF'S COUNSEL: That's correct.
THE COURT: You know what rulings I made in connection with this matter. So, you know, if it's a statement by a party offered against the party, it doesn't have to be a statement against interest, that's in 803(c)(25), but that doesn't require that in 803(b)(1), so I don't know what else to say, except that if in fact you're violating a previous order of mine, or if in fact it violates any of the rules of evidence and shouldn't be adduced, I would only recommend you don't do it. I'm not going to try to read anybody's mind.
DEFENSE COUNSEL: Judge, Iagain, I have the deposition.
THE COURT: Sir, I have said what I have to say. You may proceed.
DEFENSE COUNSEL: Thank you, Your Honor.
BY DEFENSE COUNSEL: Did you have a discussion with plaintiff about the happening of the accident sometime thereafter?
A: Yes, sir.
Q: And about when was that?
A: Within a couple weeks of the accident.
Q: And what did Mr. Priolo tell you?
PLAINTIFF'S COUNSEL: Continuing objection, Your Honor.
THE COURT: Is he going to testify that he indicated that he was negligent in some way?
DEFENSE COUNSEL: He's not going to use the word negligent, Your Honor, but if I may, the plaintiff's expert testified
THE COURT: Well, the plaintiff's expert testified to three things, that it's reasonably foreseeable that an employee would remove the cover, well, that someone would remove the cover; that it's reasonably foreseeable that the employee would reach in the machine, and it's reasonably foreseeable that warning labels would be ignored. That's what he testified to.
DEFENSE COUNSEL: Your Honor, he also testified, based on my recollection, that Mr. Priolo's reaching into the machine did not constitutewithout turning off the power was not misuse of the machine. I believe this statement
THE COURT: Misuse of the machine will be a legal determination. But that's all right. This is an intelligent jury. Tell us what he said.
BY DEFENSE COUNSEL: What did Mr. Priolo tell you?
A: He came in and he said to me, we talked for a minute, and he saidwe talked about the accident. He said it was my fault. I shouldn't have done it. I should have turned off the machine.
THE COURT: He didn't ask you for a speech. He asked you for what he said.
A: He came in and he said to me, we talked for a minute, and he saidwe talked about the accident. He said it was my fault. I shouldn't have done it. I should have turned off the machine.
THE COURT: Okay. Now, ladies and gentlemen of the jury, you will absolutely, positively disregard that. And you, counselor, know that that goes to the negligence of the defendant. It has nothing whatsoever to do with what an employer what a manufacturer should reasonably believe. And if you really think that that has some relevance to this case, sir, you're in a different world than we are. So you forget it. And I'll tell you again at the end of the case to forget it, because we're not here to evaluate the conduct of this employee. We're here to evaluate whether this machine was a defectively manufactured machine. And we're here to determine whether the manufacturer of the machine reasonably believed that somebody could put their hand in the machine, whether they could foresee that that could happen. The mere fact that he did it has nothing whatsoever to do with it.
Obviously what he did was wrong. If he hadn't done anything wrong, we wouldn't be here, would we? There would have never been an accident. So forget it. You're going to focus on this machine and what the manufacturer of the machine reasonably could have foreseen. That's all. I think that's a pretty good limiting instruction. You want anything further, Mr. Greenberg? *244 PLAINTIFF'S COUNSEL: No, Your Honor.
THE COURT: Do you have any objection to the limiting instruction?
DEFENSE COUNSEL: Your Honor, I'd just indicate that I respectfully disagree with the Court and
THE COURT: Fine. Go ahead. Disagree. Move on.
DEFENSE COUNSEL:I offered it in good faith.
THE COURT: Well, I didn't say you didn't, did I? I'm just telling you that it has nothing whatsoever to do with the case.
DEFENSE COUNSEL: I understand Your Honor's ruling.
THE COURT: Well, I'm glad you do that. Let's move on.
At the completion of the case, the judge charged the jury with an instruction similar to the "curative" instruction.
We first observe that the trial judge correctly determined that plaintiff's negligence was not an issue to be considered by the jury. Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 406 A.2d 140 (1979); see also Johansen v. Makita U.S.A., Inc., 128 N.J. 86, 607 A.2d 637 (1992). Despite the trial judge's prompt curative instruction, plaintiff argues that the reference was so prejudicial that a new trial is warranted.
The problem here was not simply defense counsel's inappropriate and unwarranted inquiry into plaintiff's statement which was certain to elicit the answer which the trial judge had previously barred, nor was it the judge's overstated curative instruction which emphasized plaintiff's wrongdoing while at the same time instructing the jury to disregard it. The problem was that the entire discussion of the issue including references to plaintiff's negligence, took place in the presence of the jury in the first instance.
The trial judge announced at the commencement of the case that there would be no side-bar conferences. In a different context, the Supreme Court acknowledged, as do we, that the decision to hear matters at side-bar or in open court, in the presence of the jury, is one within the discretion of the trial court. State v. Smith, 55 N.J. 476, 483, 262 A.2d 868, cert. denied, 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970). In State v. Biegenwald, 106 N.J. 13, 27, 524 A.2d 130 (1987), the Court again addressed the refusal to allow side-bar conferences in the context of jury selection. The Court concluded that challenges based on bias and partiality should be asserted at side-bar and then noted:
The minimal inconvenience and delay entailed by this procedure are clearly offset by the undesirability of a prospective juror knowing that his presence on the jury is objectionable to one party.

[Ibid.]
While we are extremely reticent to interfere in the discretionary management of a trial by a competent and experienced trial judge, the blanket bar of side-bar conferences is not the exercise of discretion at all; it is an arbitrary rule which fails to recognize the vagaries of trial and, is, in itself, an abuse of discretion. In this case all parties and the trial judge knew the direction in which defense counsel's questions were heading and understood that the answer sought was plaintiff's admission of his negligence. Nothing was served by requiring that the legal argument take place before the jury. Far less was accomplished by the trial judge not conducting a R. 104(a) hearing, i.e., first hearing the answer to the question and then ruling on its admissibility out of the jury's presence before an inadmissible response and ultimately the need for an instruction to "cure" the inappropriate answer. It is wrong to suggest that anything a jury hears can be remedied by a curative instruction. Trial management is difficult enough in dealing with the unforeseen or inadvertent comment or answer. A trial judge's responsibility is to minimize such errors. To allow entirely foreseeable error to occur in the presence of the jury solely to foster an arbitrary rule barring side-bar conferences cannot be condoned. The issue here had been anticipated by every participant at trial and could have been avoided by a side-bar conference or R. 104(a) hearing out of the presence of the jury. We do not fault the instruction per se except to recognize that it again repeated that plaintiff admitted *245 to being negligent. All of this could have been avoided by the proper exercise of discretion and the appropriate use of a side-bar conference to eliminate the need for any instruction, curative or otherwise.
We disapprove of the practice of a blanket ban on all side-bar conferences. There are issues involving bias, prejudice or the admission of evidence, such as the matter before us, which warrant the use of such a trial management procedure. It makes little sense to have the jury hear inadmissable evidence when a short conference involving minimal delay will obviate the injection of error into the proceedings. So, too, barring side-bar conferences inhibits lawyers in their ability to argue fully the merits of their position out of fear of suggesting or emphasizing that which they are attempting to exclude. That is what happened here. A review of the record reveals that the argument was stilted and never openly addressed the underlying issue. We do not, by disapproving the blanket ban on side-bar conferences, suggest any limitation on a trial judge's appropriate exercise of discretion in limiting the use of such conferences. But the discretion must be exercised properly. Trial judge's can make these determinations on an instance by instance basis or set forth to counsel the appropriate parameters for the use of such conferences. The trial judge here demonstrated a complete command of our court rules and rules of evidence with a citation for each ruling made, yet both the court and evidence rules are to be "construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2. "Our rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip." Stone v. Old Bridge Tp., 111 N.J. 110, 125, 543 A.2d 431 (1988) (Clifford, J., dissenting).
Plaintiff's counsel neither objected to the curative instruction nor moved for a mistrial. We must, therefore, determine whether the introduction of plaintiff's statement was of such moment as to warrant reversal. We note that before plaintiff rested, the trial judge instructed the parties that he would be advising the jury that plaintiff "did something wrong" but the jury must "forget what he did wrong." There was no objection to this observation. At the conclusion of the trial, the judge charged the jury that plaintiff was negligent but that negligence was to be disregarded.
Ordinarily, we are reluctant to consider issues raised on appeal when no objection has been made below; however, at the time of the curative instruction, counsel faced an unusual dilemma. If he objected in front of the jury, he simply emphasized plaintiff's negligence. His silence minimized the damaging impact of the witness's answer and the curative instruction which highlighted the negligence.
We recognize that the jury never reached an issue involving plaintiff's conduct; however, the issue of plaintiff's negligence was so significantly insinuated into the case, that the curative instruction could hardly remedy the error. We conclude that the introduction of the statement of plaintiff's negligence was so prejudicial that it was plain error and capable of producing an unjust result. R. 2:10-2. We remand for a new trial.

B.
On its cross-appeal against Tyco, Compacker contends that its contractual indemnification clause controls and requires Tyco to indemnify and defend Compacker in this action. The operative facts related to this issue are not in dispute. After "some general discussions concerning the machine's specifications," Compacker and Tyco exchanged forms which resulted in Tyco's purchase of the machine. First, on June 21, 1989, Compacker sent Tyco an "updated proposal" containing, in addition to the machine's specifications, price and other terms, the following indemnification provision:
10. LIABILITY: [Tyco] agrees to defend, hold harmless and indemnify [Compacker] against any and all contract or tort claims arising out of the possession, use, misuse or improper storage or handling of the machine, except for claims based on sole negligence of [Compacker]. *246 The proposal "locked in" Compacker's price for ninety days.
On November 8, 1989, Tyco sent a purchase order for the machine at the price indicated in Compacker's proposal with the notation, "per quote dated June 4, 1989." Tyco's purchase order contained the following indemnification provision printed on the reverse side:
12. [Compacker] shall indemnify, defend and hold harmless the owner and/or [Tyco] and its parent corporation and parent corporation's other subsidiaries and/or customers thereof from any and all liability, judgments, costs, damages or expenses which may result on account of any defect in any supplies or the performance of any services order hereunder and will maintain, for that purpose, liability insurance including product liability for personal injury of at least $300,000/ $500,000 and property damage of $100,000. Upon request [Compacker] shall supply [Tyco] with a certificate of such coverage.
On November 21, 1989, Compacker sent Tyco a letter acknowledging receipt of the purchase order and seeking to alter the requested delivery date without reference to any other terms.[2]
Compacker asserts that its proposal, including its indemnification clause, constituted an offer which Tyco accepted by sending its purchase order; Tyco's indemnification clause should be considered as an additional or different term under N.J.S.A. 12A:2-207(2). Tyco, on the other hand, contends that N.J.S.A. 12A:2-207(2) does not apply and their respective indemnification clauses "knock each other out." Tyco maintains that the fortuitous order in which their forms were sent should not be dispositive. The motion judge concluded that the dispute was controlled by N.J.S.A. 12A:2-207(3),[3] and, since the competing indemnification clauses were not "terms on which the writings of the parties agree," neither clause became part of the contract. He denied Compacker's motion seeking indemnification.
We need not resolve the "battle of the forms" or address the application of the "knock-out" rule because we are satisfied that the terms of Compacker's indemnification provision, as written, preclude recovery where a claim is based on its sole negligence. Ambiguities present in indemnification clauses must be strictly construed against the indemnitee, particularly where indemnification is sought against the indemnitee's sole negligence. Leitao v. Damon G. Douglas Co., 301 N.J.Super. 187, 191, 693 A.2d 1209 (App.Div.) (citing Ramos v. Browning Ferris Indus., 103 N.J. 177, 191, 510 A.2d 1152 (1986)), certif. denied, 151 N.J. 466, 700 A.2d 879 (1997). When specifically construing such indemnification clauses, "[t]he judicial quest is for the reasonably certain meaning of the language used, taken as an entirety, considering the situation of the parties and the operative usages and practices coupled with the objects the parties were striving to achieve." Stier v. Shop Rite, 201 N.J.Super. 142, 151, 492 A.2d 1055 (App.Div.1985) (citations omitted).
Here, Compacker seeks indemnification against plaintiff's action alleging that the machine was defectively designed. In such actions, the issue for resolution is the condition of the product rather than the operator's exercise of care in operating the product. Johansen v. Makita U.S.A., Inc., 128 N.J. 86, 95, 607 A.2d 637 (1992) ("Where, as here, a plaintiff claims he was injured because a machine lacked essential safety devices, the relevant question is whether the absence of such devices rendered the machine's design defective."). Compacker's indemnification provision explicitly excepts "claims based on [the] sole negligence of [Compacker]."e very essence of this exception is that Compacker is not entitled to indemnification where it is solely responsible for the alleged liability. This is precisely the case here, where, as manufacturer of the machine, Compacker's negligent design was under attack. See Mettinger v. Globe Slicing Mach. Co., 153 N.J. *247 371, 379-80, 709 A.2d 779 (1998) (noting that the manufacturer bears primary liability for defective products); Lee's Hawaiian Islanders, Inc. v. Safety First Prods., Inc., 195 N.J.Super. 493, 504, 480 A.2d 927 (App.Div.) (observing that manufacturer is wholly liable in the case of a design or manufacturing defect), certif. denied, 99 N.J. 205, 491 A.2d 703 (1984). As such, even if its indemnification provision did become part of the parties' contract, Compacker is not entitled to indemnification from Tyco for costs incurred in defending Compacker against a claim based on Compacker's improper design. We conclude that Compacker's cross-appeal is without merit.
We reverse the judgment in favor of defendant and remand for a new trial; we affirm the order denying indemnification.
NOTES
[1] Plaintiff also asserts that the trial judge erred in admitting photographs of warning labels into evidence. We conclude that this argument is meritless. R. 2:11-3(e)(1)(E).
[2] Only Tyco referenced this final letter from Compacker, and a copy of it was included in the record.
[3] While it is not clear why the motion judge focused on the "conduct" provision, he did note his concern that Tyco sent its "acceptance" after the time to accept had expired.