

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-2000

# Kane v. BOC Group, Inc.

Precedential or Non-Precedential:

Docket 99-2035

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Kane v. BOC Group, Inc." (2000). *2000 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 17, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-2035

HELEN KANE

v.

THE BOC GROUP, INC.,

      Third Party Plaintiff

v.

QUALITY FOODS CO.,

      Third Party Defendant

      The BOC Group, Inc.,

      Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 95-cv-03147)
District Judge: Honorable Anita B. Brody

Argued on August 2, 2000

Before: ALITO, ROTH and AMBRO, Circuit Judges

(Opinion filed October 17, 2000)

Mark R. Rosen, Esquire (Argued)
Barrack, Rodos & Bacine
2001 Market Street
2200 Two Commerce Square
Philadelphia, PA 19103

Anthony Watkins, Esquire
Lisa A. Watkins, Esquire
Mesirov, Gelman, Jaffe, Cramer &
 Jamieson
1735 Market Street, 37th Floor
Philadelphia, PA 19103-7598

 Attorneys for Appellant

Audrey J. Copeland, Esquire
Charles W. Craven, Esquire (Argued)
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

John L. Slimm, Esquire
Marshall, Dennehey, Warner,
 Coleman & Goggin
200 Lake Drive East
Woodland Falls Corporate Park
Suite 300
Cherry Hill, NJ 08002

 Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

The BOC Group, Inc., leased a cryogenic screw auger to
Quality Foods Company under an agreement that Quality
Foods would provide a safe work place and protect its
employees against injury. Helen Kane, a Quality Foods
employee, was cleaning condensation from the ceiling in the
area of the screw auger when her right arm became
entangled in it. Her arm was trapped for nearly two hours
and was amputated as a result of the injury to it. The issue

2

facing us in this appeal is whether the language of the lease agreement was sufficient to make Quality Foods liable to BOC for Quality Foods' breach of its contractual obligation to provide a safe work place.

The District Court had jurisdiction of this case under 28 U.S.C. S 1332, and we have jurisdiction to review the judgment of the District Court pursuant to 28 U.S.C. S 1291.

For the reasons stated below, we will vacate thefinal judgment and remand this case to the District Court for further proceedings consistent with this opinion.

I. FACTS

On January 4, 1995, Helen Kane, a control technician for Quality Foods Company, suffered the injury, which necessitated the amputation of her arm. At the time of the accident, Kane was working near the screw auger while its lid was open. The proximity switch, which prevents the machine from operating with the lid open, had been bypassed and the rotating screw auger was exposed. The machine was manufactured by Airco Industrial Gases, a division of BOC, and was leased to Quality Foods on July 8, 1991, under an "Application Equipment Rental Agreement." One of the provisions of the Agreement imposed on Quality Foods the duty to safeguard its workplace for its employees.

Kane received benefits for her injuries under the New Jersey Workers' Compensation Act, N.J. Stat. Ann. SS 34:15-1 et seq. (West 1988 & Supp. 1998). She then brought an action against BOC for negligence, product liability, and breach of warranty. BOC in turn filed a third-party complaint against Quality Foods, alleging indemnification and breach of contract to provide a safe workplace.

Before trial, BOC settled with Kane for two million dollars. Quality Foods then moved for summary judgment and BOC moved for partial judgment. After oral argument, the District Court granted Quality Foods' motion for summary judgment against BOC on January 22, 1998.

3

Kane v. BOC Group, Inc., No. 95-3147 (E.D. Pa. Jan. 22, 1998). The District Court held that the language of the Agreement was insufficient as a matter of law to provide BOC with a right of indemnification from Quality Foods. The District Court did not, however, address BOC's breach of contract claim.

Upon appeal by BOC, we affirmed the District Court's decision regarding the express indemnification claim but vacated the grant of summary judgment and remanded the case for further consideration of BOC's breach of contract claim. Kane v. BOC Group, Inc., No. 98-1152, slip op. at 7-8 (3d Cir. Aug. 17, 1998). We also directed the District Court to examine Port Authority of N.Y. & N.J. v. Honeywell Protective Servs., 535 A.2d 974, 976 (N.J. Super. Ct. App. Div. 1987), in relation to BOC's breach of contract claim.

On remand, the District Court again granted Quality Foods' motion for summary judgment on BOC's third-party complaint by a November 30, 1999, Memorandum and Order. Kane v. BOC Group, Inc., No. 95-3147 (E.D. Pa. Nov. 30, 1999). Relying on New Jersey precedent, most notably Honeywell and Mayer v. Fairlawn Jewish Center, 186 A.2d 274 (N.J. Sup. Ct. 1962), the District Court explained that BOC's breach of contract claim could not withstand summary judgment because "BOC can present no set of facts that would establish that BOC could have been liable to Kane for a claim that it could then recover from Quality [Foods]." Id. at 11.

BOC now appeals to this court.

II. STANDARD OF REVIEW

We exercise plenary review of the District Court's grant of summary judgment. See Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998). Because subject matter jurisdiction is based on diversity of citizenship, "we must apply the substantive law as decided by the state's highest court." Travelers Indem. Co. v. DiBartolo, 131 F.3d 343, 348 (3d Cir. 1997). Where there is no controlling decision from the New Jersey Supreme Court, we accord "significant weight" to applicable decisions

4

of the lower courts of New Jersey in order to "forecast how the Supreme Court would resolve the issue." Id.

III. DISCUSSION

The New Jersey cases of Port Authority of N.Y. & N.J. v. Honeywell Protective Servs., 535 A.2d 974 (N.J. Super. Ct. App. Div. 1987), and Mayer v. Fairlawn Jewish Center, 186 A.2d 274 (N.J. Sup. Ct. 1962), provide the standard under which a third-party can recover against an employer based upon the employer's breach of contract to provide a safe workplace and to protect employees against injury. In Honeywell, the Port Authority had contracted with Honeywell to service its warehouse alarm system. Under the contract, Honeywell was required to "exercise every precaution to prevent injuries to persons and to design and erect such barricades, ladders, scaffolding, fences and railings . . . as may be necessary, desirable or proper." 535 A.2d at 976-77. A Honeywell employee was injured while servicing the alarm system in a warehouse owned by the Port Authority. The employee sued the Port Authority alleging negligence in maintaining the building, and the Port Authority, in turn, sued Honeywell for express indemnification, implied indemnification, and breach of its contractual obligation to protect the safety of its employees in the performance of its work.

The New Jersey Superior Court, Appellate Division, found that based on the language of the contract "there is a potential contractual basis for a jury to find liability on the part of Honeywell." Id. at 979. Putting to the side the express and implied indemnification theories of recovery,[1] the court recognized breach of contract as a viable claim that was not barred by the Worker's Compensation Act:

> We are convinced that a rule allowing a third party to recover damages from an employer based upon the employer's breach of its agreement to safeguard its

_____

1. The court found that the Port Authority could not maintain its claim against Honeywell based on an express indemnification theory. The Port Authority's claim based on an implied indemnification theory was remanded.

5

employees from harm during the performance of the contract does no violence to the policy and purpose of the Workers' Compensation Act. The object of the exclusive-remedy provision is in no sense subverted by such an action.

Id. at 981.

As the Honeywell court explained, its holding was informed by the New Jersey Supreme Court's decision in Mayer v. Fairlawn Jewish Center. There, Mayer, an invitee of the Fairlawn Jewish Center, brought an action for negligence against the Center for injuries he suffered while on its premises. Randall Construction was joined as defendant because it was making repairs and alterations to the Center's buildings at the time of Mayer's injury. The Center filed a cross-claim against Randall seeking damages for breach of contract. The contract between the Center and Randall had provided: "The Contractor shall adequately protect the work, adjacent property and the public, and shall be responsible for any damage or injury due to his act or neglect." 186 A.2d at 278. The trial court severed the Center's cross-claim, and Mayer's action against the Center and Randall proceeded to trial, resulting in the jury finding that Mayer's accident was caused by the combined negligence of the Center and Randall. The trial court subsequently dismissed the cross-claim.

On appeal, the New Jersey Supreme Court held that whether the Center could maintain a breach of contract claim depended on the nature of its liability. According to the court, the jury's finding that Mayer's injuries were caused by the joint negligence of the Center and Randall could mean liability was imposed on the Center for one of the following reasons:

> 1) because of Randall's violation of Center's nondelegable duty to Mayer, or 2) [it] arose from a conclusion that after actual or constructive notice of the unguarded areaway created by Randall, Center was guilty of Secondary negligence with respect thereto, that is, it failed to supply some physical protection or warning in order to avoid injury to its invitees, or 3) [it] resulted from a finding that Center was guilty of

6

> independent Active negligence which concurred with that of Randall in producing the accident.

Id. at 282. According to the court, if the Center's liability was based on secondary or passive negligence as illustrated by the first two alternatives, then the Center would be allowed to recover from Randall. If, however, the Center's liability derived from independent active negligence of the type illustrated in the third alternative, there could be no recovery based on breach of contract. Id.

As the District Court noted, Honeywell and Mayer stand for the proposition that "a contractee cannot recover any damages against a contractor if the injuries sustained by the employee were in part caused by the contractee's active negligence." Kane v. BOC Group, Inc., No. 95–3147, slip op. at 10 (E.D. Pa. Nov. 30, 1999). Applying this standard, the District Court ruled that BOC could recover its settlement costs from Quality Foods for breach of contract only if BOC's fault could be characterized as passive or if BOC faced no liability to Kane. The District Court rejected the first possibility that BOC's liability was based on passive negligence because it found that the nature of Kane's claims dictated a finding of active fault. Id. at 13. The second possibility, the District Court concluded, would not help BOC because "[w]ithout facing any liability to the original plaintiff, BOC settled a meritless claim, and therefore would be precluded from recovering any of the improper settlement from Quality [Foods]." Id. at 15. We disagree with both conclusions drawn by the District Court.

The District Court, as well as the parties, made much of the active/passive negligence or fault distinction used in Honeywell and Mayer. But concepts such as these, which are "constructed and labelled in order to accomplish what is commonly agreed to be a just and equitable result, tend nevertheless, like all legal fictions, to become increasingly technical, continuously qualified, and ultimately more formally categorical than substantively meaningful." Doloughty v. Blanchard Construction Co., 352 A.2d 613, 619 (N.J. Super. Ct. Law Div. 1976). The concept of failure to warn, for example, can take on the label of passive or active negligence depending on the context. In Honeywell and Mayer, failure to warn of danger created by another is a

7

breach of duty that constitutes, when compared with the culpability of the party that created the danger in the first place, passive fault. In a product liability setting, failure to warn is a breach of duty for which a manufacturer would be held liable based on its "active" negligence in manufacturing a product that lacks adequate warning. See e.g., Priolo v. Compacker, Inc., 728 A.2d 239, 247 (N.J. Super. Ct. App. Div. 1999); Arcell v. Ashland Chem. Co., 378 A.2d 53, 64 (N.J. Super. Ct. Law Div. 1977).

The lesson of Honeywell and Mayer, therefore, is not that the result depends on the mere use of the terms "active" or "passive" negligence or fault, but that we must look to the reasoning that gives meaning to these words. Simply stated, Honeywell and Mayer teach us to look to the contract and determine whether the negligence, if any, of one party to the contract [BOC] is the sort of act that the agreement with the other party to the contract [Quality Foods] was meant to cover. If BOC's negligence is the kind of conduct beyond the scope of the undertaking contractually assumed by the Quality Foods, then BOC cannot recover:

> The theme of the contract [to provide a safe working place] is that the contractor [here Quality Foods] will not perform . . . work in such negligent fashion as to create dangerous conditions on the premises and thereby expose third persons to harm. Protection of such persons against independent negligent acts of commission of the contractee [here BOC] must be considered beyond the scope of that undertaking in the absence of language establishing such a broad obligation.

Mayer, 186 A.2d at 281–82 (citations omitted).

BOC cannot, however, be held to ensure that Quality Foods fulfills the obligations that the agreement by its very terms assigns to Quality Foods. Thus, if BOC's negligence consists merely of failing to discover and correct Quality Food's own breach of contract to provide a safe working place, BOC's negligence does not excuse Quality Foods' breach and BOC may recover. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 135 (1956) ("the contractor, as the warrantor of its own services, cannot use

8

the [contractee's] failure to discover and correct the contractor's own breach of warranty as a defense.").

Here, the Agreement between BOC and Quality Foods imposed upon Quality Foods certain continuing duties to safeguard the workplace for its employees, such as operating the equipment in accordance with all applicable laws and regulations, providing safe operating conditions, and not altering the equipment in any way.[2] If Kane's injuries resulted from BOC's defective design or manufacture of the conveyer, then BOC cannot recover on a breach of contract theory from Quality Foods because Quality Foods' obligation under the Agreement was limited to providing a safe workplace for the use of the conveyor and did not extend to assuring the safety of the conveyor as designed and manufactured by BOC. If BOC employees were the ones who in fact encouraged Quality Food personnel to bypass the proximity switch in order to operate the machine with the lid open, it would be BOC, not Quality Foods, that had created the unsafe work place. If, however, Kane's injuries resulted from Quality Foods' own failure to provide a safe workplace--e.g., Quality Foods altered the equipment, discarded warnings originally posted by BOC, or did not instruct employees on the proper use of the equipment--then under Honeywell and Mayer, Quality Foods' actions or inactions would constitute a breach of contract that can form a basis for BOC to recover from Quality Foods.

We also reject the District Court's conclusion that BOC cannot maintain a breach of contract action if Quality

_____

2. The pertinent part of the Agreement read:

The Equipment shall be operated by User in strict conformity with all applicable laws, ordinances, orders or regulations of all public authorities, and the instructions furnished by [BOC]. The User shall notify its employees, agents and subcontractors involved with the use, operation and/or maintenance of the Equipment of[BOC]'s instructions and the User shall be responsible for assuring that appropriate safety procedures are followed by such individuals at all times. . . . User shall keep the Equipment clean and in safe operating conditions at all times. . . . The Equipment shall not be altered or changed by the User in any way. . . . Agreement, P 3.

Foods were wholly at fault and BOC did not face any liability to Kane. The District Court explained:"If Quality's conduct were the cause of Kane's injuries and BOC did not cause the harm, then BOC would not face any liability to Kane at all. Without facing any liability to the original plaintiff, BOC settled a meritless claim, and therefore, would be precluded from recovering any of the improper settlement from Quality." Kane, slip op. at 15. In reaching this conclusion, the District Court relied on the standard set out in Frank Martz Coach Co., Inc. v. Hudson Bus Transp. Co. Inc., 44 A.2d 488, 481 (N.J. Sup. Ct. 1945) (citing Popkin Bros., Inc. v. Volk's Tire Co. , 23 A.2d 162 (N.J. Sup. Ct. 1941), which provides that in order for an indemnitee to recover from the indemnitor, he must show, among other things, that the settlement was reasonable. But this standard applies to recovery based on the theory of indemnification, not breach of contract as BOC is here asserting.

Both the Honeywell and Mayer decisions emphasized that the breach of contract theory is a cause of action separate from the theories of express or implied indemnification. Thus in Honeywell, the court wrote about the breach of contract theory: "Even without regard to the theory of implied indemnification, there is a potential contractual basis for a jury to find liability on the part of Honeywell . . .." 535 A.2d at 980. And the court in Mayer observed about the Center's breach of contract claim: "We are not dealing here with a claim of express or implied indemnity or restitution." 186 A.2d at 561. Even Martz, from which the District Court cites the standard for indemnification, recognized that recovery based on breach of contract is different from recovery based on indemnification. In Martz, the plaintiff 's complaint for recovery of settlement money consisted of two counts--the first was based on breach of contract and the second was based on indemnity. Instead of treating the two counts identically, as the District Court would have us do, the court found against the plaintiff on the breach of contract count because he had failed to prove a breach, not because he had not met the indemnification standard that the court applied to the second count. Id. at 489.

The fact that BOC can recover on the breach of contract theory what it is unable to recover on the theories of express and implied indemnity does not change the analysis. In Polidori v. Kordys, Puzio & Di Tomasso, AIA, 526 A.2d 230 (N.J. Super. Ct. App. Div. 1987), the court faced the same objection. Its response is apt here:

> [T]he damages here are claimed to flow as a consequence of a breach of the contractual relationship between Polidori, Kordys, and Superior. This is an entirely separate and distinct cause of action from the contribution and indemnification counts of the complaint. What Kordys and Superior are arguing, in effect, is that because Polidori is precluded from recovery on one theory, he must be barred from recovery on all others. This is obviously incorrect. It is simply of no consequence that an award on the contract count of the complaint would have the effect of giving Polidori the recovery he could not obtain on the contribution and indemnification counts. This is a common result where a complaint alleges more than one theory of recovery.

Id. at 235.

Accordingly, we find that the District Court erred in concluding that BOC's breach of contract claim was insufficient as a matter of law.

IV.

For the foregoing reasons, we will vacate the final judgment of November 30, 1999, and remand this case to the District Court for further proceedings consistent with this opinion.

A True Copy:
Teste:

> Clerk of the United States Court of Appeals
> for the Third Circuit

11