EDWIN L. MAYER, PLAINTIFF-RESPONDENT, v. FAIRLAWN JEWISH CENTER AND RANDALL CONSTRUCTION CO., INC., DEFENDANTS-APPELLANTS.

Argued October 10, 1962—Decided December 3, 1962.

552

*Mr. William R. Morrison* argued the cause for defendant-appellant Fairlawn Jewish Center (*Messrs. Morrison, Lloyd and Griggs,* attorneys).

*Mr. James B. Emory* argued the cause for defendant-appellant Randall Construction Co., Inc. (*Mr. J. Chester Massinger,* attorney).

*Mrs. Mabel L. Richardson* argued the cause for plaintiff-respondent (*Mr. Morton Stavis,* of counsel; *Messrs. Gross and Stavis,* attorneys).

The opinion of the court was delivered by
FRANCIS, J.   Plaintiff Edwin L. Mayer sought damages from defendant Fairlawn Jewish Center on account of injuries suffered by him while an invitee on its premises.   Randall Construction Co., Inc. was joined as defendant because at the time of the accident it was engaged in making substantial repairs and alterations to the Center's building.   The suit was predicated upon the theory that the negligence of one or both defendants caused the mishap and consequent injuries. Center filed a cross-claim against Randall for breach of the construction contract between them, seeking recovery for any sum plaintiff might be awarded or collect against Center. The trial court severed the cross-claim, following which the

action proceeded to trial against defendants and resulted in an award to plaintiff based upon a finding by a jury that plaintiff's accident had resulted from their combined negligence. Thereupon the trial court dismissed the cross-claim. Appeal to the Appellate Division followed, challenging the propriety of the damage verdict and dismissal of the cross-claim. Both phases of the judgment were affirmed. 71 *N. J. Super.* 313 (1961). We granted certification. 37 *N. J.* 90 (1961).

On its appeal Center advances two contentions: First, it is a charitable corporation within the meaning of *L.* 1958, *c.* 131, and since plaintiff was a recipient of its benefactions at the time of the accident, it is immune from liability under that enactment. Second, under the construction contract Randall agreed to assume the burden of protecting Center's invitees on the premises from injury arising out of the work. Plaintiff's injury having arisen from Randall's failure to provide reasonable safeguards against a work-connected danger, Center is entitled to recover from Randall any sum it becomes liable to pay plaintiff. Randall's appeal to the Appellate Division and in this court was based upon an allegation that plaintiff was guilty of contributory negligence as a matter of law.

## I.

It is not necessary to repeat the facts adduced at the trial. They are adequately set forth in the opinion below. (71 *N. J. Super.*, at *pp.* 315–317). We agree with the conclusion reached by the Appellate Division that plaintiff cannot be classed as a beneficiary of the Center's bounty within the contemplation of the statute. *Id.,* at *pp.* 317–321.

We desire to emphasize further plaintiff's capacity as an employee of Development Corporation of Israel. Assuming, *arguendo*, his employer was a recipient of Center's benefactions, Mayer's status on the premises cannot be measured by that of his employer. His rights so far as the statutory

554

immunity is concerned depended upon his own individual relation with the Center. True, he was on the premises under the aegis of his employer, and by virture of the employer's arrangement became an implied invitee of the Center. But he was there in fulfillment of his function and obligation as an employee to engage in the employer's work at the direction of the employer, and not for the purpose of receiving personally the philanthropy of the Center. Under the circumstances present he was a stranger to the charity and the statute does not stand in the way of recovery. See, *Rose v. Raleigh Fitkin-Paul Morgan, etc., Foundation,* 136 *N. J. L.* 553 (*E. & A.* 1948); *Edwards v. Hollywood Canteen,* 27 *Cal. 2d* 802, 167 *P. 2d* 729 (*Sup. Ct.* 1946); *Andrews v. Young Men's Christian Ass'n of Des Moines,* 226 *Iowa* 374, 284 *N. W.* 186 (*Sup. Ct.* 1939); *Sisters of Charity of Cincinnati v. Duvelius,* 123 *Ohio St.* 52, 173 *N. E.* 737 (*Sup. Ct.* 1930); *Gartland v. New York Zoological Society,* 135 *App. Div.* 163, 120 *N. Y. S.* 24 (*App. Div.* 1909); *Bruce v. Central Methodist Episcopal Church,* 147 *Mich.* 230, 110 *N. W.* 951, 10 *L. R. A., N. S.,* 74 (*Sup. Ct.* 1907).

## II.

Randall's contention that plaintiff was guilty of contributory negligence as a matter of law is without merit. As the Appellate Division held, the issue was properly submitted to the jury for determination. The evidence showed that the door through which plaintiff passed into the area of the incomplete construction work was neither locked nor barred; it had a lighted exit sign on or over it and allegedly one of Center's employees pointed the door out to him as an available means of departure from the building. Plaintiff was not aware of any danger on the outside in fairly close proximity to the door, and in the face of circumstances fairly implying an invitation to use the exit, the jury was the proper agency to decide whether he was guilty of any culpable contribution to the accident.

## III.

Under the circumstances of this case, Center had a nondelegable duty to exercise reasonable care for the safety of persons using the premises at its invitation. If, while repairs or structural alterations were going on, a dangerous condition was created which resulted in injury to an invitee, liability for damages would exist. And with respect to that liability it would be immaterial whether the construction work was being performed by Center's own employees or by an independent contractor. *Gill v. Krassner*, 11 *N. J. Super.* 10, 15 (*App. Div.* 1950); *Levine v. Bochiaro*, 137 *N. J. L.* 215, 219 (*E. & A.* 1948); *Rizzi v. Ross*, 117 *N. J. L.* 362, 365–366 (*E. & A.* 1937); *Hussey v. Long Dock R. Co.*, 100 *N. J. L.* 380, 384 (*E. & A.* 1924); 2 *Harper & James, Law of Torts*, § 26.11 (1956); *Prosser, Torts*, §§ 64, 78 (*2d ed.* 1955); 2 *Restatement, Torts*, 1128, § 416; see *Blancher v. Bank of California*, 47 *Wash. 2d* 1, 286 *P. 2d* 92, 95–96 (*Sup. Ct.* 1955). Apparently, awareness of such exposure resulted in the following provision in the contract between Center and Randall:

"PROTECTION OF WORK, PROPERTY & PERSONS.

The Contractor shall adequately protect the work, adjacent property and the public and shall be responsible for any damage or injury due to his act or neglect."

Although the quoted clause could not relieve Center of responsibility for injuries negligently inflicted upon third persons *as a result of Randall's work,* there is no reason in law or public policy why contracting parties cannot agree between themselves that the contractor would assume and agree to perform the contractee's non-delegable duty, as well as his own separate common law duty, to protect third persons against such harm. When a compact of that type is made, obviously the parties have in contemplation that the damages reasonably to be expected from its breach are those which would be imposed by law upon the party burdened with the

nondelegable duty, *i. e.* the monetary award to the injured person in the negligence action.

■ Thus, where such an agreement exists, failure of the contractor to exercise due care in the performance of the work which causes injury to a third person, constitutes a breach of it. If the injured person subsequently recovers a damage judgment against his invitor (the contractee) based wholly upon the contractor's negligence, the judgment must be deemed to arise from the breach of the assumption clause of the contract. This follows because the contractee's liability flows from the negligence of the contractor, which, by imputation of law, also constitutes a violation of the contractee's nondelegable duty. In such situation, *as between themselves,* the contractor becomes obligated to reimburse the contractee for, or to relieve him from, payment of the judgment. See, *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.,* 350 *U. S.* 124, 130–135, 76 *S. Ct.* 232, 100 *L. Ed.* 133 (1956); *Schwartz v. Merola Bros. Construction Corporation,* 290 *N. Y.* 145, 48 *N. E.* 2d 299 (*Ct. App.* 1943); *San Francisco Unified School District v. California Building Maintenance Co.,* 162 *Cal. App.* 2d 434, 328 *P. 2d* 785 (*D. Ct. App.* 1958); *Alisal Sanitary District v. Kennedy,* 180 *Cal. App.* 2d 69, 4 *Cal. Rptr.* 379 (*D. Ct. App.* 1960); *Ring v. The Dimitrios Chandris,* 43 *F. Supp.* 829 (*E. D. Pa.* 1942); *Garden City Floral Co. v. Hunt,* 126 *Mont.* 537, 255 *P. 2d* 352 (*Sup. Ct.* 1953); *Midvale Coal Co. v. Cardox Corp.,* 157 *Ohio St.* 526, 106 *N. E.* 2d 556 (*Sup. Ct.* 1952); *Restatement, Contracts,* § 330 (1932); *Corbin on Contracts* (1951), §§ 1007, 13, 14.

In *Ryan, supra,* the stevedoring company agreed with Pan-Atlantic, the shipowner, to perform all stevedoring operations required by Pan-Atlantic in its coastwise service. This included loading ships with mixed cargo. Ryan's employees loaded a hatch negligently with the result that, at the unloading in a different port, a roll of corrugated paper broke loose and injured one of Ryan's longshoremen. The injured man obtained a judgment against Pan-Atlantic because of a jury finding that it had failed to furnish him with a safe place to

work. Pan-Atlantic then sued Ryan for the amount of the judgment alleging breach of the stevedoring company's contractual obligation to stow the cargo properly in the hatch. In sustaining a finding against Ryan, the United States Supreme Court said:

"The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third party complaint is grounded upon the contractor's breach of its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner. [Italics contained in opinion.]

\* \* \* \* \* \* \* \*

2. *The other question is whether, in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo.* [Italics contained in opinion.]

The answer to this is found in the precise ground of the shipowner's action. By hypothesis, its action is not based on a bond of indemnity such as it may purchase by way of insurance, or may require of its stevedoring contractor, and which expressly undertakes to save the shipowner harmless. If the shipowner did hold such an express agreement of indemnity here, it is not disputed that it would be enforceable against the indemnitor. On the other hand, the shipowner's action for indemnity here is not based merely on the ground that the shipowner and contractor each is responsible in some related degree for the tortious stowage of cargo that caused injury to Palazzolo. Such an action, brought without reliance upon contractual undertakings, would present the bald question whether the stevedoring contractor or the shipowner, because of their respective responsibilities for the unsafe stowage, should bear the ultimate burden of the injured longshoreman's judgment. That question has been widely discussed elsewhere in terms of the relative responsibility of the parties for the tort, and those discussions have dealt with concepts of primary and secondary or active and passive tortious conduct. Because respondent in the instant case relies entirely upon petitioner's contractual obligation, we do not meet the question of a noncontractual right of indemnity or of the relation of the Compensation Act to such a right.

\* \* \* \* \* \* \* \*

The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of

petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." 350 *U. S.*, at *pp.* 131–134, 76 *S. Ct.*, at *pp.* 236, 237.

See also, *Weyerhaeuser S. S. Co. v. Nacirema Co.*, 355 *U. S.* 563, 78 *S. Ct.* 438, 2 *L. Ed. 2d* 491 (1958); *San Francisco Unified School District v. California Building Maintenance Co., supra,* 328 *P. 2d,* at *pp.* 790–794.

In *Phoenix Bridge Co. v. Creem,* 102 *App. Div.* 354, 92 *N. Y. S.* 855 (*App. Div.* 1905), affirmed without opinion 185 *N. Y.* 580, 78 *N. E.* 1110 (*Ct. App.* 1906), the same basic principle was expounded, although it was couched in terms of implied indemnity. The court said:

"In other words, while both the plaintiff and the defendants were equally culpable and equally liable to the traveling public for the omission of duty which resulted in the injury, yet, as between themselves, the plaintiff was entitled to rely upon the defendants to discharge the duty because of their contractual relations, and the former could only be deprived of the right of indemnity by proof that it did in fact participate in some manner in the omission, beyond its mere failure to perform the duty imposed on both by the law." 92 *N. Y. S.*, at *p.* 856.

█ Further, if the liability of the contractee is predicated not only on the contractor's violation of his own duty to the injured person, but also because after actual or constructive notice of the danger created, the contractee failed to remedy it, again, as between the two, the liability *under the contract* must be deemed solely that of the contractor. This follows since Randall had stipulated to protect adequately the work and persons lawfully on the premises, and as between it and Center the obligation assumed encompassed liability which might be imposed on Center for *secondary* negligence, *i. e.* for failure to correct the dangerous condition created by Randall after actual or constructive notice of it.

In *Ryan, supra,* the contention was advanced that since the shipowner had an obligation to supervise the stowage and had the right to reject unsafe stowage of the cargo and did not do so, it was barred from recovery from the stevedoring contractor for any damage caused by the contractor's *uncorrected* failure to stow the rolls in a reasonably safe manner. The court held otherwise saying:

> "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach." 350 *U. S.,* at *pp.* 134–135, 76 *S. Ct.,* at *p.* 238.

See also, *Weyerhaeuser S. S. Co. v. Nacirema Co., supra,* 355 *U. S.,* at *p.* 569, 78 *S. Ct.* 438, 2 *L. Ed. 2d* 491; *San Francisco Unified School District v. California Building Maintenance Co., supra,* 328 *P. 2d,* at *pp.* 792–794; *Phoenix Bridge Co. v. Creem, supra; Otis Elevator Co. v. Maryland Casualty Co.,* 95 *Colo.* 99, 33 *P. 2d* 974 (*Sup. Ct.* 1934).

In *Builders Supply Co. v. McCabe,* 366 *Pa.* 322, 77 *A. 2d* 368, 24 *A. L. R. 2d* 319 (1951) the Pennsylvania Supreme Court took the same view, although in a context of implied indemnity. It said:

> "Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." 77 *A. 2d,* at *p.* 371.

If, however, the invitor (contractee) is himself guilty of separate and independent active negligence which

concurs with that of the contractor in producing the invitee's injury, there can be no recovery *inter se* on the "protection of work" clause in the contract. The reason is obvious. The theme of the contract is that the contractor will not perform the construction work in such negligent fashion as to create dangerous conditions on the premises and thereby expose third persons to harm. Protection of such persons against independent negligent acts of commission of the contractee must be considered beyond the scope of that undertaking in the absence of language clearly establishing such a broad obligation. *Miller v. Pennsylvania R. R. Co.*, 236 *F. 2d* 295 (2 *Cir.* 1956); *Pittsburgh Steel Company v. Patterson-Emerson-Comstock, Inc.*, 404 *Pa.* 53, 171 *A. 2d* 185 (*Sup. Ct.* 1961); *Builders Supply Co. v. McCabe, supra*, 77 *A. 2d*, at p. 370; *United States Fidelity & Guarantee Co. v. Virginia Engineering Co.*, 213 *F. 2d* 109, 112, 115, 63 *A. L. R. 2d* 1114, 1118, 1119, 1121 (4 *Cir.* 1954); *Otis Elevator Co. v. Maryland Casualty Co., supra*, 33 *P. 2d*, at *pp.* 977–978; *Detroit, G. H. & M. Ry. Co. v. Boomer*, 194 *Mich.* 52, 160 *N. W.* 542 (*Sup. Ct.* 1916).

In sustaining the trial court, the Appellate Division took the view that the "Protection of Work, Property & Persons" agreement was merely a statement of the duty which the common law cast on Randall in the doing of the work. The opinion indicates that the duty to use reasonable care to protect third persons against injury arising from the construction activity was one which came into being when the contract between Randall and Center was made and would have existed regardless of the specific "protection of work" clause. In other words, the provision was mere surplusage and created no special rights between the parties with regard to injury claims presented by third parties. It was pointed out also that the agreement does not contain any stipulation fixing responsibility to pay damages to third persons on some formula for measuring degrees of negligence between them or for Randall to assume payment of a money judgment against both parties based on their joint negligence. And

the Appellate Division said that, since in the damage action Randall and Center had been found guilty of concurrent negligence by the jury, the "protection of work" clause imposed no obligation on Randall to pay the judgment; as between them Center's right must be regarded as regulated by the Joint Tortfeasors Contribution Law. *N. J. S.* 2A:53A-1 *et seq.*

We cannot agree that the clause in question was empty of significant legal content; that it amounted to nothing more than a reference to Randall's common law duty. As between Center and Randall, clearly it means that Randall will take the necessary precautions to safeguard persons from injury arising out of the construction work. And as a natural consequence it signifies a breach of contract by Randall where injury to a third person arose from Randall's negligence in the performance of the work either alone or jointly with Center in a situation where Center's negligence was predicated on inaction (*i. e.* failure to remedy a risk of harm created by the contractor after actual or constructive notice of its existence). *Cf. Rommell v. United States Steel Corp.*, 66 *N. J. Super.* 30, 44, 46 (*App. Div.* 1961) ; *Buscaglia v. Owens-Corning Fiberglas*, 36 *N. J.* 532 (1962). We are not dealing here with a claim of express or implied indemnity or restitution. See *Buscaglia v. Owens-Corning Fiberglas*, 68 *N. J. Super.* 508, 517 (*App. Div.* 1961), affirmed, 36 *N. J.* 532 (1962) ; *Public Service Electric & Gas Co. v. Waldroup*, 38 *N. J. Super.* 419, 430–432 (*App. Div.* 1955) ; *Restatement, Restitution* (1937), § 95. Conceptually, however, the breach of contract remedy—particularly when the liability of Center to Mayer is *secondary* or constructive negligence—bears a substantial resemblance to the principles underlying implied indemnity and restitution. *Cf. Popkin Bros., Inc. v. Volk's Tire Co.*, 20 *N. J. Misc.* 1, 23 *A. 2d* 162 (*Sup. Ct.* 1941) ; *Schwartz v. Merola Bros. Construction Corporation, supra*; *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 *Ky.* 396, 224 *S. W. 2d* 165 (1949) ; *Builders Supply Co. v. McCabe, supra.*

Thus, the jury determination in the damage suit that Mayer's injuries were caused by the joint negligence of Center and Randall cannot be regarded as dispositive of Center's right under the contract to recover from Randall its share of the monetary burden imposed by the verdict. It is impossible to divine from the finding whether liability was imputed to Center (1) because of Randall's violation of Center's non-delegable duty to Mayer, or (2) arose from a conclusion that after actual or constructive notice of the unguarded areaway created by Randall, Center was guilty of *secondary* negligence with respect thereto, that is, it failed to supply some physical protection or warning in order to avoid injury to its invitees, or (3) resulted from a finding that Center was guilty of independent *active* negligence which concurred with that of Randall in producing the accident. More specifically, with respect to the third alternative, the factual issue for jury consideration would be: After Center had actual or constructive notice of the unguarded areaway, did *its employees* (a) put the light on over or inside the exit sign on the unlocked or unbarred door leading out of the building and into the danger area, (b) direct Mayer to the door as an exit available for use? Whose obligation was it under the contract to lock or bar the door through which Mayer passed into the area of danger? These problems cannot be answered on the record and no special interrogatories were submitted to the jury at the negligence trial for the purpose of obtaining answers as to the specific nature of, and basis for, the finding against Center.

In this connection it may be noted that during argument of an application by Center for a new trial after the verdict, the trial court said:

"The jury also found on the basis of the charge that the Center was guilty of negligence in its failure, not because he [the contractor] failed to do that but because they [Center] saw a condition and independently they failed to inspect or protect." (Insertions ours.)

The state of the evidence and the charge to the jury are such, however, that, in justice to the parties in this proceeding, the

verdict against Center should not be regarded, as a matter of law, as based solely on a finding of its *secondary* negligence.

If either or both of the first two alternatives, (1) and (2) above, represented the reason for the finding of concurrent negligence by Center, in our view recovery over against Randall would be warranted for breach of the "Protection of Work, Property & Persons" clause in the construction contract. Damages for the breach, as we have said above, must be any portion of the joint judgment which Center is obliged to pay. On the other hand, if the third alternative, (3) above, alone or in combination with either or both (1) and (2), was the basis on which the jury held Center jointly liable with Randall, then Center's liability came about at least in part from its own positive tortfeasance which was independent of, and not included within, the scope of Randall's contractual assumption. In this event Center was truly a joint tortfeasor and any remedy against Randall stems from the Joint Tortfeasors Contribution Act, *supra*, alone.

It follows from the discussion above that the trial court should not have entered summary judgment dismissing the cross-claim. A plenary trial (preferably without a jury since the problem involved is one which a judicial mind would comprehend more readily—although jury trial cannot be denied if one of the parties so desires) should have been, and now must be, held to determine the basis for the finding of joint negligence on the part of Center and Randall. See *Schwartz v. Merola Bros., supra,* 48 *N. E. 2d,* at *p.* 304; *Brown Hotel Co. v. Pittsburgh Fuel Co., supra.* At such trial the fact finder must regard the verdict of joint negligence reached by the jury in the personal injury case as conclusive. The issue to be disposed of relates solely to the liability of Center and Randall to pay that judgment, not as to Mayer, but as between themselves. If the concurrent negligence of Center was of the type described above in alternative (1) or (2) or both, its liability for Mayer's injury arose from breach of the protection clause of their contract and the responsibility to pay the judgment is solely Randall's. If,

564

however, Center's concurrent negligence was that described in alternative (3), either alone or in combination with (1) or (2) or both, its responsibility arises independently of the contract; in the eyes of the law, the liability is of Center's own making, and no relief is afforded by the contract.

*Weyerhaeuser, supra,* presented a situation quite analogous to the present one on this aspect of the case. Nacirema Co., a stevedoring company, contracted with Weyerhaeuser to "faithfully furnish" the shipowner with "such stevedoring services as may be required" and to provide all necessary labor and supervision for "the proper and efficient conduct of the work." There was no indemnity provision in the agreement. During the course of unloading a ship, a longshoreman-employee of Nacirema Co. was injured through a defective condition of equipment used by the longshoremen in their unloading operations. The injured man sued Weyerhaeuser alleging negligence. Weyerhaeuser impleaded Nacirema charging breach of the stevedoring contract. At the trial of the damage suit the action over against Nacirema was severed. The negligence case proceeded and the jury, finding Weyerhauser "guilty of some act of negligence," returned a verdict against it. The trial court then dismissed the claim over against Nacirema. The United States Supreme Court reversed saying:

"Since the liability of [Nacirema Co.] depended on different principles, * * * all fact issues involved in the third-party action should have been submitted to the jury after the verdict in the main case. Further, the verdict for Connolly did not *ipso facto* preclude recovery of indemnity by petitioner, for as we have indicated, the duties owing from [Weyerhaeuser] to Connolly were not identical with those from [Weyerhaeuser] to [Nacirema Co.]. While the jury found petitioner 'guilty of some act of negligence,' that ultimate finding might have been predicated, *inter alia,* on a failure of [Weyerhaeuser] to remove the shelter when the ship left New York, or a failure to correct or warn [Nacirema Co.] of a latent dangerous condition known to [Weyerhaeuser] when [Nacirema Co.] begins the Boston unloading. Likewise, the finding might have been predicated on a failure of [Weyerhaeuser] during the five days in Boston to inspect the shelter, detect and correct the unsafe condition. Although any of these possibilities could provide Connolly a basis of recovery,

at least the latter would not, under Ryan, prevent recovery by [Weyerhaeuser] in the third-party action. * * * It was improper, therefore, for the court to direct a verdict for [Nacirema Co.] based on the finding for Connolly." 355 *U. S.*, at *pp.* 568–569, 78 *S. Ct.*, at *pp.* 441–442. (Insertions ours.)

Accordingly, the judgment of the Appellate Division is affirmed on the claims of applicability of the charitable immunity statute, *L.* 1958, *c.* 131, and plaintiff's contributory negligence. It is reversed on the issue of Randall's liability to pay Center's share of Mayer's judgment, and that matter is remanded for trial in accordance with the views herein expressed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For reversal*—None.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—None.