Helen KANE, Plaintiff,

v.

The BOC GROUP, INC., Defendant and Third–Party Plaintiff,

v.

Quality Foods Company, Third–Party Defendant.

No. CIV. A. 95–3147.

United States District Court, E.D. Pennsylvania.

Nov. 30, 1999.

Gina Furia, Kolsby, Gordon Robin, Kenneth M. Rothweiler, Shore & Rothweiler, Philadelphia, PA, Allan H. Gordon, Philadelphia, PA, for Helen Kane.

Mark R. Rosen, Lisa A. Watkins, Mesirov Gelman, Jaffe, Cramer & Jamieson, Philadelphia, PA, for BOC Group.

Michael G. Conroy, Margolis Edelstein, Philadelphia, PA, for Quality Foods Co.

## MEMORANDUM AND ORDER [1]

ANITA B. BRODY, District Judge.

BACKGROUND

On July 8, 1999, Airco Industrial Gases, now The BOC Group ("BOC"), the manufacturer of a cryogenic screw conveyor,[2] leased the conveyor to Quality Foods Company ("Quality") under a lease agreement ("the Agreement").[3] The conveyor is a cooling unit and was used by Quality as an industrial food processor that mixed steak and other ingredients for sandwiches. The machine included a rotating auger or screw-like tool, covered by a hinged lid. A proximity switch was installed on the machine to prevent the auger from operating while the lid was open.

On January 4, 1995, the plaintiff Helen Kane ("Kane") was working as a control technician for Quality at its Camden, New Jersey location. That day the screw auger was being operated with the lid open. While Kane was cleaning condensation off the ceiling in the area of the machine her right arm became entangled in the screw auger. Kane's arm was trapped in the machine for nearly two hours and her arm was amputated as a result of the accident. She received worker's compensation benefits for her injuries and then brought an action against defendant/third-party plaintiff BOC for negligence, products liability, and breach of warranty. BOC joined Quality as a third-party defendant. In its third-party complaint, BOC brought actions for indemnification and breach of contract against Quality under the provisions in the Agreement.

Before trial, Kane settled her claim against BOC for two million dollars. BOC then focused upon its indemnification and breach of contract claims against Quality. Quality moved for summary judgment and BOC moved for partial summary judgment. After oral argument, believing that BOC was only pursuing its indemnification claim, I found that the agreement did not

1. I reconsider, *sua sponte*, my order of July 20, 1999 which denied third-party plaintiff The BOC Group, Inc.'s motion for partial summary judgment and denied third-party defendant Quality Foods Company's motion for summary judgment.

2. The conveyor is a refrigerated unit.

3. The language in the lease agreement relevant to this dispute is:

¶ 3 *User's Responsibilities*
The Equipment shall be operated by User in strict conformity with all applicable laws, ordinances, orders or regulations of all public authorities, and the instructions furnished by Airco. The User shall notify its employees, agents and subcontractors involved with the use, operation and/or maintenance of the Equipment of Airco's instructions and the User shall be responsible for assuring that appropriate safety procedures are followed by such individuals at all times.... User shall keep the Equipment clean and in safe operating conditions at all times and also be completely responsible for all maintenance of the Equipment in accordance with applicable instruc-

tions.... The Equipment shall not be altered or changed by the User in any way including, without limitation any defacement of any markings on the Equipment indicating ownership by Airco or any other matter.... User shall bear all risk of loss of damage to the Equipment and shall indemnify Airco [BOC] against all costs, claims and liabilities for personal injury or property damages in any way connected with any use or possession of the Equipment....
¶ 7 *Allocations of Responsibility*
Except to the extent specifically provided otherwise elsewhere herein, Airco [BOC] shall not be liable for any claim, liability, damage, loss or expense, whether consequential, special, incidental, direct or otherwise, (including, without limitation, loss of use or loss of production), caused by, arising out of or connected with any failure of or use of the Equipment during the time User has the right to possession or use of the same hereunder (or while the same is on the Location or any other Location as a result of any act, request or consent of User) whether or not resulting from negligence or from breach of contract on the part of Airco.

provide BOC with a right to indemnification from Quality and granted Quality's motion and denied BOC's motion.

In an opinion filed on August 17, 1998, the Third Circuit affirmed my decision that BOC had failed to state a claim for express indemnity under the agreement, but ruled that BOC's breach of contract claim had not been waived and vacated my grant of judgment in favor of Quality. The court said that:

> In granting summary judgment to Quality Foods, the district court failed to consider this possible breach of contract cause of action. Inasmuch as we cannot say now that this claim is insufficient as a matter of law, we will not rule on the merits of this claim or any possible defenses to it. Rather, we will vacate the district court's grant of summary judgment and remand this case to the district court in order for the court to consider this claim.

*Kane v. BOC Group, Inc.,* 166 F.3d 1205, 1998 WL 794769, at 7 (3d Cir.1998) (citation omitted). I was further instructed to consider the applicability of *Port Authority of New York & New Jersey v. Honeywell Protective Servs.,* 222 N.J.Super. 11, 535 A.2d 974 (N.J.Super.Ct.App.Div.1987)("*Honeywell*") to BOC's separate claim for breach of contract. *See id.*[4]

Before me are BOC's motion for partial summary judgment and Quality's motion for summary judgment. The parties agree that the law of the state of New Jersey applies. (Tr. 12/16/97 at 4–5.) Because jurisdiction is premised on diversity, the law of New Jersey's highest court applies. *See Travelers Indem. Co. v. Dibartolo,* 131 F.3d 343, 348 (3d Cir.1997). If no New Jersey Supreme Court case controls, significant weight must be accorded to applicable decisions of lower courts of New Jersey in order to forecast how the Supreme Court would resolve the issue. *Id.*

I will grant Quality's motion for summary judgment and will deny BOC's motion for partial summary judgment.

## DISCUSSION

Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. Pro. 56(c). The movant (both parties in this case) bears the burden of demonstrating that the evidence presented is insufficient to support the claims and therefore a reasonable jury would be unable to reach a verdict for the opposing party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If this initial burden is met, then the opposing party bears the burden of demonstrating that there are disputes of material fact that should proceed to trial. *See Masushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If this burden has not been met, then summary judgment should be granted. All doubts are resolved in favor of the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

A third-party plaintiff may recover from a third-party defendant a payment it made in settlement with the original plaintiff, if the third-party plaintiff proves that (1) it legitimately faced liability to the original plaintiff, (2) the settlement was reasonable, and (3) its liability was "of such a character that ... [it] may recover over against the [third-party] defendant." *Frank Martz Coach Co. v. Hudson Bus Transp. Co.,* 23 N.J.Misc. 342, 349, 44 A.2d 488, 491 (1945)(citing *Popkin Bros. v. Volk's Tire Co.,* 20 N.J.Misc. 1, 23 A.2d 162 (N.J.Sup.1941)). Therefore, BOC must prove that (1) it legitimately faced liability to Kane, (2) the settlement was reasonable, and (3) its liability was of such a character that it may recover over against Quality.

---

4. BOC contends that under the opinion of the Third Circuit, the only issue before me is whether Quality did in fact breach its contact with BOC. I believe this is too narrow an interpretation of the ruling.

Assuming that BOC is able to prove that it legitimately faced liability to Kane and that its settlement was reasonable for that claim, it must then establish that its liability was such that allowed it to recover from Quality. *Honeywell* instructs on this last issue.

In *Honeywell,* the Port Authority of New York and New Jersey ("Port Authority") owned a warehouse and contracted with Honeywell, which was in the business of installing and maintaining fire alarm systems, to service the warehouse alarm system; the contract required Honeywell to "exercise every precaution to prevent injuries to persons and to design and erect such barricades, ladders, scaffolding, fences and railings ... as may be necessary, desirable or proper." *Id.* at 976–77. Nielsen, a Honeywell employee, was injured when he fell through the roof of a warehouse while repairing the warehouse's alarm system. Following his accident, Nielsen sued the Port Authority alleging negligence in maintaining the building. Port Authority instituted an action against Honeywell to recover damages for Honeywell's alleged breach of its contractual obligation to protect the safety of its employees and others in the course of servicing and maintaining the fire alarm. Later, Port Authority settled Nielsen's claim for $120,000.

The New Jersey Superior Court, Appellate Division, held that Port Authority could not seek contribution from Honeywell under the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A–1 *et seq.*, because the exclusive-remedy provisions of New Jersey's Worker's Compensation Act, N.J.S.A.34:15–8, preclude an employer's tort liability. Therefore, even if the Honeywell's concurrent negligence contributed to the injury of an employee, Port Authority may not recover from Honeywell under a contribution claim. *See id.* at 977 (citing *Ramos v. Browning Ferris Industries,* 103 N.J. 177, 510 A.2d 1152 (1986)).

Although Port Authority could not pursue a contribution claim against Honeywell, the court noted that parties could allocate the burden of risk as to potential tort liability through an express indemnification agreement. Thus, Port Authority and Honeywell could have contracted that Honeywell would indemnify Port Authority for any damages arising from Port Authority's own negligence. To impose such an obligation on the contractor, however, the indemnification agreement must be expressed unequivocally. The court then determined that the contract did not expressly require Honeywell to indemnify Port Authority for the latter's own negligence.

The court further noted that, in narrow circumstances, indemnification can be implied against an employer. A third party may recover damages from an employer for the injuries to an employee based on implied indemnity when (1) a special legal relationship exists between the employer and the third party, and (2) the liability of the third party is completely vicarious. In assessing the nature of Port Authority's liability, the court noted that Nielsen could proceed against Port Authority under three possible theories: (1) independent negligence by Port Authority in failing to maintain the roof in proper condition; (2) vicarious liability, for failing to remedy a dangerous condition created by Honeywell in breach of its agreement with Port Authority, or (3) a combination of negligence by Port Authority and Honeywell's breach of its duties under the contract. The court determined that Port Authority could recover against Honeywell only in situation number (2), where Port Authority was held liable based solely on secondary liability. The court remanded the case to determine whether Nielsen's injuries were caused solely by Port Authority's negligence or the concurrent negligence of both Port Authority and Honeywell.

In addition to the implied indemnification claim, the court recognized that Port Authority's breach of contract claim

against Honeywell may be viable. The *Honeywell* court cited two United States Supreme Court cases, that held that the exclusive-remedy provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, did not bar a shipowner from bringing a contract claim against a stevedoring contractor to recover damages arising from a stevedoring employee's injuries. *See Honeywell*, 535 A.2d at 980 (citing *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), *Weyerhaeuser S.S. Co. v. Nacirema Operating Co.*, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958)). The court further recognized that the New Jersey Supreme Court in *Mayer v. Fairlawn Jewish Center*, 38 N.J. 549, 186 A.2d 274 (1962), had adopted the principle established in *Ryan* and *Weyerhaeuser*.

In *Mayer*, the New Jersey Supreme Court permitted a breach of contract claim under similar circumstances. *See Mayer*, 186 A.2d at 283. Mayer, an invitee of the Fairlawn Jewish Center, brought an action against the Center for injuries suffered while on its property. The Randall Construction Company was later joined as a defendant because it was repairing the building at the time of the accident. The Center filed a cross-claim against Randall to recover any damages for breach of their contract, which provided: "The Contractor shall adequately protect the work, adjacent property and the public and shall be responsible for any damage or injury due to his act or neglect." The jury found that the plaintiff's accident resulted from the combined negligence of both defendants, and the court dismissed Center's cross claim.

On appeal, the New Jersey Supreme Court noted that the principles of the breach of contract claim were conceptually similar to those of implied indemnity and held that the Center could maintain its breach of contract claim only if the Center's liability was secondary or vicarious. In assessing the nature of the Center's liability, the court stated that the Center's liability was secondary if it was held liable for either (1) Randall's violation of the Center's non-delegable duty to the invitee or (2) its own failure to supply physical protection or warning to protect its invitees after it had actual or constructive knowledge of the dangerous condition caused by Randall. If the Center was found secondarily liable, its responsibility would have arisen solely from Randall's breach of contract and the Center would be allowed to recover from Randall. If the Center's liability resulted from its own active negligence, however, its responsibility arose from its own tortfeasance and was beyond the scope of the contract. The court reasoned that: "Protection of [third] persons against independent negligent acts of commission of the contractee must be considered beyond the scope of that undertaking in the absence of language clearly establishing such a broad obligation." *Mayer*, 186 A.2d at 280–81. Therefore, *Mayer* held that the Center was completely barred from any recovery under the contract if it was liable for independent, active negligence that concurred with Randall's negligence; it also recognized that a contractee could still recover from a contractor in spite its own active negligence, but only if the language of the contract clearly establishes that obligation for the contractor.[5]

In adopting the rule from *Mayer*, the *Honeywell* court noted that *Mayer* did not involve an employer-employee relationship between the contractor and the injured party, and therefore, did not implicate the Workers' Compensation Act. Although

---

**5.** *Mayer* also recognized that if both the Center and Randall were concurrently negligent, the Center could maintain a contribution claim against Randall under the Joint Tortfeasor Contribution Act. *See Mayer*, 186 A.2d at 282. As in *Honeywell*, however, the contractor in the case before me is the employer of the injured party and tort remedies against the employer under the Joint Tortfeasor Contribution Act are barred by New Jersey's Worker's Compensation Act. *See Honeywell*, 535 A.2d. at 977.

the injured party in *Honeywell* was an employee of the contractor, *Honeywell* held that permitting a breach of contract claim against an employer did not undermine the goals of the exclusive-remedy provisions of the Workers' Compensation Act. Therefore, the *Honeywell* court determined that the rule from *Mayer* was relevant to Port Authority's claim. Analyzing the language in the contract and the relationship between Honeywell and the Port Authority, the court stated that Honeywell had contractually assumed the Port Authority's non-delegable duty to protect invitees from any dangerous conditions created by Honeywell while performing maintenance on the alarm system. Therefore, Port Authority could bring a contract claim against Honeywell under *Mayer*, but only if its negligence were completely secondary.[6]

■ *Honeywell* also noted that if a contractee is actively negligent and the contract does not provide for recovery when the contractee is actively negligent, the contractee may not recover any damages proportional to the contractor's degree of fault. According to *Honeywell*, *Mayer* rejected the possibility of a recovery commensurate with the contractor's fault in the event of contractee's independent negligence. *See Honeywell*, 535 A.2d at 982 (noting inconsistency with *Rommell v. U.S. Steel Corp.*, 66 N.J.Super. 30, 168 A.2d 437 (App.Div.1961)). Drawing a distinction between the remedies of an implied indemnification claim and a contract claim, the New Jersey Superior Court, Appellate Division, in *Rommell* held that an actively negligent contractee could recover from the contractor the proportional amount of the damages caused by its breach of contract. *See id.* (citing *Rommell*, 168 A.2d at 445–46). The *Honeywell* court noted that *Mayer* held that contract remedies sub-

stantially resembled implied indemnity remedies, which permit no recovery for an actively negligent contractee. Therefore, the *Honeywell* court stated that:

> [o]bviously that portion of our holding in *Rommell* that active fault on the part of the contractee does not bar it from recovering breach of contract damages against the contractor cannot be reconciled with our Supreme Court's holding to the contrary in *Mayer*.

*Id.* Therefore, the rule that emerges from *Mayer* and *Honeywell* is that a contractee cannot recover any damages against a contractor if the injuries sustained by the employee were in part caused by the contractee's active negligence, unless the contract clearly establishes that obligation.

Applying the rules in *Honeywell* and *Popkin Bros.*, BOC can recover its settlement from Quality Foods for breach of contract only if (1) BOC legitimately faced liability from Kane's claim, (2) the settlement was reasonable, and (3) either: (a) BOC's potential liability was not based in its active fault or (b) BOC was actively at fault and the language of the BOC Quality Agreement clearly establishes that BOC could collect even in the event of its active fault.[7]

■ I conclude that BOC cannot recover its settlement from Quality because: (1) BOC faced liability to Kane only for active fault, and (2) the language of the BOC Quality Agreement did not clearly provide for BOC's recovery for its own active fault. Therefore, BOC can present no set of facts that would establish that BOC could have been liable to Kane for a claim that it could then recover from Quality.

In assessing the nature of BOC's potential liability under Kane's claim, the start-

---

**6.** The *Honeywell* court remanded the case to determine whether Port Authority was actively at fault in causing Nielsen's injuries.

**7.** For purposes of this opinion, "active fault" is equivalent to "active negligence" and

"passive fault" is equivalent to "passive negligence," and where applicable the terms "primary" and "secondary liability" are used interchangeably with "active" and "passive" fault.

ing point is Kane's complaint.[8] Kane's complaint brought the following claims against BOC: (1) negligence in design, manufacture, testing, distribution, advertising, promotion and sale of a dangerous product; (2) strict liability for manufacturing and selling an unreasonably dangerous product; and (3) breach of warranty. (Kane Compl. ¶ 6, 13, 21, 31). Under New Jersey's Products Liability Act ("NJPLA"), the common law claims are subsumed into a single statutory cause of action for product liability.[9] *See* N.J.S.A. § 2A:58C–1; *see also, Tirrell v. Navistar International, Inc.,* 248 N.J.Super. 390, 398, 591 A.2d 643, 647 (1991). A product liability claim under the NJPLA may be founded on three possible theories: manufacturing defect, design defect and inadequate warning. *See Feldman v. Lederle Labs.,* 97 N.J. 429, 449, 479 A.2d 374 (1984).

■ Kane's product liability claim was essentially based on design defect and failure to warn. (Kane Compl. ¶ 13, 21.) To prove a design defect under the NJPLA, a plaintiff must prove the existence of a defective condition, that the defect existed when the product was under the control of and distributed by the defendant, and that the defect caused injury to a reasonably foreseeable user. *See Feldman,* 479 A.2d at 385. Although products liability claims ostensibly focus on the safety of the product, rather than the conduct of the manufacturer, New Jersey courts have explicitly incorporated a negligence analysis when analyzing an alleged design defect. *See Fabian v. Minster Machine Co., Inc.,* 258 N.J.Super. 261, 272–73, 609 A.2d 487, 493; *O'Brien v. Muskin Corp.,* 94 N.J. 169, 183, 463 A.2d 298 (1983). In determining whether a design was defective, New Jersey courts have applied the risk-utility analysis, which weighs the risks posed by the product against its utility in the marketplace. The risk-utility scrutiny is virtually identical to a negligence analysis: "If [the manufacturer] acted as a reasonably prudent person under all circumstances, there is no actionable defect in the product. Note the similarity to an ordinary negligence analysis. This, of course, is the equivalent of a negligence test...." *Dreier,* et al., *New Jersey Products Liability & Toxic Torts Law,* § 5:2 at 30, 31 (1999)(citing *Feldman,* 479 A.2d at 385); *see also, Oquendo v. Bettcher Industries, Inc.,* 939 F.Supp. 357, 362 (D.N.J.1996); *Zaza v. Marquess & Nell, Inc.,* 144 N.J. 34, 49, 675 A.2d 620, 628 (1996)(stating "under the [NJPLA], ... the ultimate question to be resolved in design-defect and failure-to-warn cases is whether the manufacturer

---

8. Kane's complaint alleged:
"13. [BOC] was negligent in its development, design, manufacture, testing, distribution, advertising, promotion and sale of [the screw auger]. The negligence of the defendant ... consisted of but is not limited to the following:
  (a) negligently designing the screw-auger unit which allowed a bystander or passerby to become caught, snagged or snared by the unit while open and in operation;
  (b) failing to design and manufacture the screw-auger unit with a fail-safe, automatic cut-off switch which would prevent operation of the unit when the lid of the unit was in an open and upright position;
  (c) failing to design a freezer lid that could not be opened during operation of the screw-auger unit;
  (d) failing to provide adequate warnings of the foreseeable dangers involved with their product;

  (e) failing to design an automatic cut-off switch within reasonable reach of all areas of the entire unit; and
  (f) failing to design and manufacture a guard, shield and/or screen for the screwauger unit that would prevent incidental bystander contact with the screw while in operation....
21. [BOC] developed, designed, manufactured, tested, distributed, advertised, promoted and sold the [screw auger] in a defective condition in violation of the Restatement (Second) of Torts, Section 402(A)...." (Kane Compl. ¶ 13, 21).

9. Although claims based upon express warranty are excepted from the NJPLA, *see* N.J.S.A. § 2A:58C–1(b)(3), and can be maintained in addition to a product liability claim, the parties agree that Kane's breach of warranty claim was subsumed under the product liability action.

acted in a reasonably prudent manner in designing and fabricating a product.").

■  Like design defect claims, failure to warn claims also apply negligence principles in determining liability. *See Zaza,* 675 A.2d at 628; *see also, Feldman,* 479 A.2d at 386. The NJPLA defines an adequate warning as "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used...." N.J.S.A. 2A:58C–4. The reasonableness of the manufacturer's conduct is determined by whether, assuming the manufacturer knew of the danger represented by the product, it acted in a reasonably prudent manner in providing the warnings given. *See Feldman,* 479 A.2d at 386; *see also, Oquendo,* 939 F.Supp. at 362. To summarize, the elements of Kane's products liability action for design defect and failure to warn include elements of active fault, and therefore, BOC could not have been held passively liable to Kane.

BOC asserts that Quality's negligence superceded its own and either (1) relieved BOC of all liability or (2) limited BOC's liability to passive negligence. (BOC Mot. for Partial Summary Judgment, December 11, 1998 (Docket Entry 117) ¶¶ 84–89)(citing *Brown v. United States Stove Company,* 98 N.J. 155, 484 A.2d 1234 (1984).) In *Brown,* the New Jersey Supreme Court exonerated the manufacturer from liability for a design defect when the subsequent user substantially altered the product. *See Brown,* 484 A.2d at 1244. The *Brown* court held that the user's alterations were "the independent cause of the accident" and that "the asserted manufacturing design defect in this case was not a substan-

tial factor in contributing to the accident and hence not a 'legal' or proximate cause thereof." *See id.*

In its motion for partial summary judgment, BOC states that "the applicable legal standards establish that the actions of Quality Foods, and not those of BOC, constitute the cause of the plaintiff's injuries." (BOC Memorandum in support of Mot. for Partial Summary Judgment, December 11, 1998 (Docket Entry 117) at 12.) BOC specifically alleges that:

85. BOC's alleged negligence did not constitute a substantial factor in contributing to Kane's accident and hence was not a legal or proximate cause of the plaintiff's injuries. *See Brown v. United States Stove Company,* 98 N.J. 155, 484 A.2d 1234 (1984).

86. The alleged negligence of BOC in failing to provide a lockout switch which was more difficult to defeat was too remote to constitute the legal cause of Kane's accident. [citing *Brown* ]

87. Quality Foods' misconduct was the independent cause of Kane's accident and any design defect was only remotely connected with the plaintiff's accident. [citing *Brown* ]

.        .        .        .        .

89. Quality Foods' misconduct constituted an intervening, superseding cause of the plaintiff's accident. [citing *Brown* ]

(BOC Mot. for Partial Summary Judgment, December 11, 1998 (Docket Entry 117), at 22.) [10] Analogizing *Brown* with the instant matter, BOC asserts that Quality's conduct alone caused Kane's injuries.

BOC's argument that Quality's breaches of contract were the cause of Kane's injuries, however, is self-defeating. If Quality's conduct were the cause of Kane's injuries and BOC did not cause the harm, then BOC would not face any liability to Kane

---

**10.** While BOC presents a great deal of evidence that Quality breached of the Agreement in numerous ways and repeatedly violated

OSHA regulations, the issue of Quality's negligence is not before me.

at all. Without facing any liability to the original plaintiff, BOC settled a meritless claim, and therefore, would be precluded from recovering any of the improper settlement from Quality. *See Popkin Bros.,* 23 A.2d. at 165.

Alternatively, BOC states: "The alleged negligence, if any, of BOC, in failing to design or install a more appropriate lockout switch to provide more effective physical protection constituted, at most, merely secondary negligence, and not independent, active negligence which concurred with the actions of Quality Foods in producing Kane's injuries [citing *Honeywell,* 535 A.2d at 982]." (BOC Mot. for Partial Summary Judgment, December 11, 1998 (Docket Entry 117), ¶ 88, at 22.) As noted above, however, the nature of Kane's claims precluded a finding of passive liability against BOC.

Because the only liability BOC faced to Kane was based upon BOC's active fault, *Honeywell* permits BOC to recover from Quality only if the terms of the BOC Quality Agreement clearly establish BOC's right to recover from Quality in the event of BOC's own active fault. In the Agreement between Quality and BOC, Quality agreed to use the equipment leased from BOC in conformity with safety laws and regulations, and agreed to assure that appropriate safety precautions were followed. *See* Agreement ¶ 3, *supra* n. 2. The BOC Quality Agreement also provides for a limitation on BOC's responsibility to Quality. *See* Agreement ¶ 7, *supra* n. 2 (stating "[BOC] shall not be liable for any claim [or] liability ... caused by, arising out of or connected with any failure of or use of the Equipment ... whether or not resulting from negligence or from breach of contract on the part of [BOC].") This Allocation of Responsibility provision, however, extinguishes Quality's ability to sue BOC for any claim arising out of the use or possession of the auger. It does not impose an obligation on Quality to reimburse BOC for BOC's own independent fault that occurred before the lease began.

In my previous opinion that was affirmed by the Third Circuit, I held that the BOC Quality Agreement created a limitation of BOC's liability to Quality, but did not clearly establish that Quality assumed liability for BOC's negligence. *See Kane v. The BOC Group,* 992 F.Supp. 773, 776 (E.D.Pa.1998)(stating "it is unclear whether this indemnity is intended to apply to injuries or damages stemming from defects or negligence which took place before Quality had 'use or possession' of the equipment or which could be considered unconnected with the use and possession of the equipment."). A similar analysis of the language is appropriate in a breach of contract claim: unless a contract specifically undertakes to cover the active fault of the contractee, it is not covered. Because the BOC Quality Agreement did not clearly create Quality's obligation to reimburse BOC for its active fault, BOC cannot recover from Quality for its independent tortfeasance. Therefore, *Honeywell* precludes BOC from recovering its settlement from Quality.

### ORDER

AND NOW, this 30th day of November, 1999, IT IS ORDERED that third-party defendant Quality Food's motion for summary judgment is GRANTED. The BOC Group Inc.'s motion for partial summary judgment is DENIED. Judgment is entered in favor of Quality Foods and against BOC Group Inc.